# Supreme Court of Kentucky

2007-SC-000348-DGE

BRAD COFFMAN            APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.           CASE NUMBER 2006-CA-001559
HARDIN CIRCUIT COURT NO. 04-CI-00984

DEBRA RANKIN           APPELLEE

**OPINION OF THE COURT BY CHIEF JUSTICE LAMBERT**

<u>REVERSING</u>

This court granted discretionary review of a decision of the Court of Appeals which reversed a child custody modification decree of the Hardin Family Court. For the reasons stated herein, we reverse the Court of Appeals and reinstate the Family Court's order.

Appellant Brad Coffman and Appellee Debra Rankin f.k.a. Debra Coffman were divorced by decree of the Barren Circuit Court[1] on January 8, 2001. At that time, they were granted joint custody of their children Kaitlyn (born January 25, 1995) and Nicholas (born December 3, 1997), with Appellee being named the primary residential custodian. By all accounts the parties worked amicably to ensure that the children spent plenty of time with both parents.

---

[1] The parties and their children actually resided in Hardin County, but chose to file for dissolution in Barren County to avoid local publicity.

After a brief second marriage ended in divorce, Appellee announced her engagement to Dr. Thomas Rankin and her plans to move from Hardin County with Kaitlyn and Nicholas. On May 20, 2004, prompted by troubling information he had learned concerning Dr. Rankin's mental and addiction problems,[2] Appellant filed a petition in Hardin Family Court to modify the Barren Circuit Court's custody decree. During the pendency of this motion, Appellee sought and was granted permission by the Family Court to relocate to Jefferson County with the children and Dr. Rankin, to whom she was then married. An evidentiary hearing on the modification request was held on February 23, 2006. On May 21, 2006, the Hardin Family Court issued its findings of facts, conclusions of law, decree and order naming Appellant primary residential custodian of the children, holding that the best interests of the children would be served by a change in custody.[3] After her motion to alter, amend or vacate was overruled, Appellee sought review by the Court of Appeals.

Despite Appellee's failure to preserve the issue for review, the Court of Appeals held that the Family Court abused its discretion when it set for hearing Appellant's motion to modify custody, rather than overruling the motion for failure to establish adequate cause for custody modification as required by KRS 403.350. Without adequate cause, the Court of Appeals reasoned, the Family Court proceeded without subject matter jurisdiction when it held the hearing which led to the modification of

---

[2] Dr. Rankin acknowledged in the trial court that he had suffered from severe depression in the past and attempted suicide in 2000 after learning of his first wife's extramarital affair. Dr. Rankin further testified that he had a past addiction to narcotics which led to his participation in the Kentucky Board of Medical Licensure's Impaired Physicians Program.

[3] The order also dealt with ancillary matters such as recalculating the child support obligations of the parties, health care expenses and insurance for the children.

custody. Specifically, the Court of Appeals believed that Appellant's motion was "vague and conclusory" and failed to present a sufficient factual basis to support a finding of adequate cause for a hearing.[4] The Court of Appeals focused on the lack of "any mention of a risk of serious endangerment to the children's physical, emotional, mental and moral health based on their present environment."

The Court of Appeals based its conclusion on the view that the Family Court lacked subject matter jurisdiction. However, this Court has held that subject matter jurisdiction to adjudicate a motion to modify a child custody determination is obtained by filing a proper motion and affidavit.[5] We reiterate that holding here. The Family Court determined that the moving papers were sufficient.[6] Upon that determination, the court had subject matter jurisdiction to adjudicate the claim and proceed to the merits. There is no procedural vehicle to challenge the trial court's determination that adequate cause for a hearing is shown. Such a determination is similar to an order overruling a motion for summary judgment. Any challenge must await the trial court's final order and must be to the sufficiency of the evidence, a matter that must be preserved for appellate review. Therefore, the Court of Appeals' reversal was in error.

Notwithstanding its view of the jurisdictional issue, the majority of the Court of Appeals went on to address the merits of case. In but a single paragraph reviewing the

---

[4] Besides the allegations concerning Dr. Rankin, the motion to modify custody alleged, *inter alia*, that Appellee's lifestyle was "unstable" and that she engaged in serial romantic relationships with at least ten other people.

[5] Petrey v. Cain, 987 S.W.2d 786, 788 (Ky. 1999).

[6] Appellee also claimed for the first time on appeal that Appellant's failure to file a separate affidavit with his motion to modify custody was fatal to the request. However, we agree with the Court of Appeals' conclusion that while filing a separate affidavit is the better practice, Appellant's verified petition in this instance technically meets the requirements of an affidavit.

Family Court's exhaustive finding of facts and conclusions of law, the Court discovered an abuse of discretion:

> [I]t appears that the family court's determination to modify custody was not based upon substantial evidence, but rather upon conjecture and speculation...[W]e would have been required to hold that the findings of the family court were clearly erroneous and constituted an abuse of discretion. Our review of the record reveals that there was insufficient evidence presented to show that the children's environment endangered seriously their physical, mental, moral or emotional health, or that the harm caused by modification would be outweighed by the advantages of such a change.

As its standard for review of the evidence, the Court of Appeals focused on the lack of allegations and evidence that the children's environment "endangered seriously their physical, mental, moral or emotional health."[7] However, this is not the standard for modifying custody orders that have prevailed for two years or more. KRS 403.340 was amended by the General Assembly in 2001. From the effective date of the amendment, the "serious endangerment" standard ceased to be the only standard for custody modifications occurring more than two years after rendition of the order sought to be modified.[8] In such a circumstance, courts are now authorized to change custody based upon the best interests of the child, utilizing the factors enumerated in KRS 403.270(2).[9] A review of the Family Court's decision and the record below shows that the trial judge explicitly applied the standards articulated in KRS 403.340 to the facts and circumstances of this case in reaching its conclusions of law.

---

[7] The panel majority cites as authority for this principle the case of Betzer v. Betzer, 749 S.W.2d 694 (Ky. App. 1988).

[8] Fowler v. Sowers, 151 S.W.3d 357 (Ky. App. 2004).

[9] KRS 403.340(3)(c); Fowler, 151 S.W.3d at 359.

4

As set forth in the Court of Appeals' dissenting opinion, an appropriate standard of review in a child custody case is as follows:

> Since the family court is in the best position to evaluate the testimony and to weigh the evidence, an appellate court should not substitute its own opinion for that of the family court. If the findings of fact are supported by substantial evidence and if the correct law is applied, a family court's ultimate decision regarding custody will not be disturbed, absent an abuse of discretion. Abuse of discretion implies that the family court's decision is unreasonable or unfair. Thus, in reviewing the decision of the family court, the test is not whether the appellate court would have decided it differently, but whether the findings of the family court are clearly erroneous, whether it applied the correct law, or whether it abused its discretion.[10]

Upon our review of the record, we cannot say that the Family Court abused its discretion. This case was vigorously practiced before the Family Court for nearly two years. At the hearing, the court heard testimony from the parties and eleven witnesses. The children were interviewed by the Family Court judge *in camera*. Furthermore, the depositions of two witnesses who were unavailable for the hearing were admitted into evidence. After the hearing, the Family Court rendered thorough findings of fact and conclusions of law more than sixteen pages long. While reasonable minds may differ as to the proper outcome, it cannot be said the Family Court's decision was unreasonable or unfair. Furthermore, the decision was not clearly erroneous and applied the proper law. As such, the Court of Appeals erred by substituting its judgment for that of the Family Court.

For the foregoing reasons, the decision of the Court of Appeals is hereby reversed and the Family Court's decision is reinstated.

---

[10] B.C. v. B.T., 182 S.W.3d 213, 219-20 (Ky. App. 2005).

All sitting. Abramson, Minton, and Noble, JJ., concur. Cunningham, J., dissents by separate opinion in which Schroder and Scott, JJ., join.

COUNSEL FOR APPELLANT:

Barry Birdwhistell
BLAND & BIRDWHISTELL
2825 Ring Road
Elizabethtown, KY 42701


COUNSEL FOR APPELLEE:

David Bradley Mour
BOROWITZ & GOLDSMITH, PLC
401 West Main Street, Suite 1100
Louisville, KY 40202-4229

# $\mathfrak{Supreme\ Court\ of\ Kentucky}$

## 2007-SC-000348-DGE

BRAD COFFMAN                                                          APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.                          CASE NUMBER 2006-CA-001559
HARDIN CIRCUIT COURT NO. 04-CI-00984

DEBRA RANKIN                                                          APPELLEE

## DISSENTING OPINION BY JUSTICE CUNNINGHAM

Resisting the urge to go along with my much admired brothers and sisters, I respectfully dissent.

I agree with the majority on the jurisdictional issue, but would affirm the Court of Appeals on the merits.[1]

Having been there and done that in dealing with difficult custody cases at the trial level, I extend deep respect and deference to the trial court in this case.

However, as diligent as the trial court appears to have been, I believe there was an abuse of discretion in finding there was substantial evidence to justify a change of custody in this case. The decision by this Court today will cause thirteen-year-old Kaitlyn and ten-year-old Nicholas to be removed from the primary custody of Appellee with whom they have lived all of their lives and, who even Appellant admits, has been a

---

[1] The Court of Appeals erroneously found that the non-custodial parent must show that the change in circumstances endangers the physical or emotional well-being of the child. The "serious endangerment" standard is not demanded for custody modifications occurring more than two years after rendition of the order which is sought to be modified. This case should have been determined on the "best interests of the child" standard utilizing the factors of KRS 403.270(2).

good mother. There is a presumption in the law that a child's present custody arrangement should continue and should not be modified unless absolutely necessary. Welcher v. Welcher, 566 S.W.2d.173 (Ky. 1978); Holt v. Chenault, 722 S.W.2d 897 (Ky. 1987).

According to the trial court's own findings, the children are doing fine in their current environment. Said the trial court: "Kaitlyn is in the gifted program at school and is doing well; furthermore, she even has a band with several of her friends in Louisville. It is clear that the children are intelligent and have been able to cope, to some extent, with the struggles between the parties." Not only has Appellee been an excellent parent to the children, to her great credit she has extended to her ex-husband and the father of these children a most liberal visitation arrangement, and has encouraged and assisted his relationship with them.

It was not until 2004, when Appellee married Dr. Thomas Rankin and announced her plans to move from Hardin County, that the current custody dispute arose. At that time, Appellant filed a petition in the Hardin Family Court to gain custody of the children. Appellee sought and was granted permission by the Family Court to relocate to Jefferson County with the children and Dr. Rankin.[2]

Therefore, the feud-raising issues in this custody dispute are Dr. Rankin and the relocation.

In the lengthy, seventeen-page Findings of Fact, Conclusions of Law, Decree and Order entered by the trial court, almost all of the fact-finding has to do with the previous instability of Dr. Rankin. Unquestionably, Dr. Rankin has suffered from mental depression and other emotional instability in the past. However, according to the trial

---

[2] It appears, although the evidence was not absolutely clear, that Appellee and Dr. Rankin have since separated and divorced.

2

court's findings, Dr. Rankin has not suffered from any of these problems during his relationship with Appellee, nor has he experienced any such problems over the past five years.

The trial court then proceeded to speculate as to what might occur. Said the trial court: "[T]he Court is concerned for the emotional and mental health of the children who do realize, to some extent, the fragile nature of Dr. Rankin's mental health. Although there was no testimony or evidence presented that whatever problems Dr. Rankin may be dealing with now or in the immediate past has substantially adversely affected the parties' children, the Court is nevertheless concerned about the children's current environment and the mental stability of Dr. Rankin and the constant stress they are experiencing as a result of being primarily in that environment." This is hardly "substantial evidence" that the current environment is in any way negative to the children's development.

As extensive as the findings were, they were centered primarily upon Dr. Rankin's ancient past. And, as the Court of Appeals noted, "little of the testimony involved the children in more than a cursory manner."

The trial court, undoubtedly with their best interests at heart, chose to take two well nurtured and emotionally healthy children away from their mother based upon what is, in essence, speculation. Said the trial court: "Although there was substantial testimony that Dr. Rankin has gotten control of his past struggles with drug addiction and depression, the Court is concerned that subjecting the parties' minor children to this constant worry and stress is not beneficial and would endanger seriously their emotional, mental, and psychological health." To find that this evidence is sufficient to change custody away from a mother, who has had the children all of their lives, will set

3

a precedent which will create justifiable apprehension for all custodial parents throughout this state, and will undermine the much needed stability for children of broken homes.

Lastly, it should be pointed out that KRS 403.270(2), subsections (a) through (i), provides factors to be considered by the trial court in determining custody in accordance with the best interests of the children. The primary factors present in this case include:

- "The wishes of the child as to his custodian[.]" See KRS 403.270(2)(b). Here, the children adamantly wish to stay with their mother.

- "The interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests[.]" See KRS 403.270(2)(c). Here, the interaction and interrelationship of Kaitlyn and Nicholas with their mother has been excellent.

- "The child's adjustment to his home, school, and community[.]" See KRS 403.270(2)(d). The evidence in this case is undisputed that the children have adjusted to their home, school, and community, and that they are doing exceptionally well in school.

- "The mental and physical health of all individuals involved[.]" See KRS 403.270(2)(e). As stated earlier, there is no evidence of record that the mental health of Dr. Rankin has in any way affected, nor is likely to affect, the welfare of the children.

KRS 403.270(3) has been totally ignored in this case. It states, in part, as follows: "The court shall not consider conduct of a proposed custodian that does not affect his [or her] relationship to the child." There is absolutely no evidence in this case

4

that Appellee's relationship with Dr. Rankin has affected her relationship with her children.

Hard work, good intentions, and exhaustive findings should not be the only requirements that a trial court meet when custody of adolescent and pre-adolescent children is being changed. The ages of Kaitlyn and Nicholas cry out for stability.

With all due respect, it appears to this writer that the opinion of this Court focuses only on the Court of Appeals' erroneous use of the "serious endangerment" standard without adequate attention to whether there was "substantial evidence" to determine that the best interests of the children demanded a change in custody. The majority opinion devotes only one sentence to this very important issue: "A review of the Family Court's decision and the record below shows that the trial judge explicitly applied the standards articulated in KRS 403.340 to the facts and circumstances of this case in reaching its conclusions of law." See slip op. at 4.

These children, both at a most critical stage of their development, deserve to have more proof presented which would justify this monumental and unsettling change in their young lives. There is insufficient evidence to justify removing thirteen-year-old Kaitlyn and ten-year-old Nicholas from their mother's primary care and custody.

Therefore, I respectfully dissent.

Scott and Schroder, JJ., join.