RENDERED: MARCH 26, 2020



𝔖upreme Court of 𝔎entucky

2019-SC-000019-DE

B.S.S.                                                                 APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.                    CASE NO. 2018-CA-00122-ME
CARTER CIRCUIT COURT NO. 15-CI-00184

K.S., NOW K.G.                                                APPELLEE

**OPINION OF THE COURT BY JUSTICE LAMBERT**

**REVERSING**

Appellant challenges a decision of the Court of Appeals that held the Carter County Family Court abused its discretion by granting him visitation with his child. Finding no abuse of discretion, we reverse the Court of Appeals and reinstate the family court's visitation order.

**FACTUAL AND PROCEDURAL BACKGROUND**

The child at issue in this case, K.S. (Child), was born in August 2011 during the marriage of B.S. (Father) and K.S. (Mother).[1] The Mother and Father separated less than four years later in May 2015.

A month after the parties separated the Mother filed a petition for the dissolution of the marriage (dissolution action), as well as a motion for temporary relief seeking sole custody of the Child, who was then three years

---

[1] Because the facts of this case involve alleged sexual abuse of a child, all parties will remain anonymous.

old. She stated in her motion that the Father was under investigation by the Cabinet for Health and Family Services (Cabinet) for allegedly sexually abusing the Child. In July 2015, the family court entered an agreed order in the dissolution action granting the Mother temporary sole custody of the Child. Two weeks later the Father filed for visitation in the dissolution action.

The day after the Father filed for visitation in the dissolution action, a Dependency, Neglect, or Abuse Petition (DNA action) was filed before the same family court judge that was presiding over the dissolution action.[2] The petition alleged that the Father had sexually abused the Child and sought removal of the Child from the Father's care. The family court denied the Father's motion for visitation in the dissolution action, taking judicial notice of the pending DNA action against him.[3]

In the DNA action, the family court ultimately entered an amended adjudication order that found:

> [a]fter an Adjudication Hearing, the Court finds that the allegations contained in the Petition have been proven by a preponderance of the evidence, and hereby makes the following specific findings of fact: The Court finds the petition as true as the child disclosed that her father "spanked" her vagina; the child exhibited fear of the father; the physical exam reveals non-specific notch in child's hymen; and the Court finds a risk of harm to the child if returned to the care of her father.

Pending disposition of the DNA action, the Child was to be in the Mother's care

---

[2] Because we do not have the benefit of the record in the DNA action, it is unclear whether the DNA petition was filed by the Mother or the Cabinet. Further, we do not know the specifics of the allegations therein, other than as addressed in the adjudication order and as related in the dissolution action.

[3] The Father was also criminally investigated by the Kentucky State Police, but no charges were filed.

only. A disposition hearing was scheduled, but before it could occur the Father appealed the family court's adjudication order to the Court of Appeals. Failing to recognize that the appeal was interlocutory, the Court of Appeals subsequently affirmed the family court in the DNA action.

Less than three months after the Court of Appeals ruled on the DNA action, the Father filed a motion in the dissolution action to modify the previously established agreed custody order. The Father argued that it would be in the Child's best interest to have visitation with him.

Following a hearing on the matter, the same family court judge who presided over the DNA action entered an order in the dissolution action granting the Father's motion to gradually establish visitation. The court's findings of fact and conclusions of law noted that "[t]he Court **did not** find that sexual abuse occurred in [the DNA action]." It also found that the Child "expressed a desire to see her father," and that the Child did not associate the absence of her father with sexual abuse. Instead, the Child believed "her father went to work one day and never returned."

Accordingly, the family court ordered an incremental reunification plan for the Father and the Child.[4] The Mother moved the family court to alter,

---

[4] The reunification plan began by granting the Father two hours of visitation every Saturday at a neutral location that the Mother could supervise. After two of those Saturday visits, the Child's paternal grandmother could also be present. After two months of visits, the Father would have visitation every Saturday for four hours at his home, to be supervised by his mother. After six months, the Father would have eight hours of unsupervised visitation at his home. After nine months, the Father would have overnight visitation every other weekend with no required supervision. Finally, after one year the Father would have visitation in accordance with statutory guidelines.

amend, or vacate its order. When her motion was denied, she appealed to the Court of Appeals.

The Mother presented two arguments to the second panel of the Court of Appeals. First, she argued that because the prior panel previously affirmed the finding of sexual abuse in the DNA action, the doctrine of law of the case precluded the family court from disregarding that finding in the dissolution action. She also argued that the family court abused its discretion by disregarding its own previous finding of sexual abuse and granting the Father visitation.

The Court of Appeals held: "[w]hether or not the law of the case doctrine applies in this case, we hold that the family court's finding in the [dissolution] action that it did not make a finding of sexual abuse in the [DNA] action is clear error."[5] It then reversed the family court and vacated its order granting visitation.

Additional facts are discussed below as necessary.

## I.  ANALYSIS

### A. Law of the case does not apply here.

As a preliminary matter, we feel we must address the issue of law of the case doctrine raised below and before this Court. "It is an iron rule, universally recognized, that an opinion or decision of an appellate court **in the same cause** is the law of the case for a subsequent trial or appeal however erroneous the opinion or decision may have been."[6]

---

[5] *K.S. v. B.S.*, 2018-CA-000122-ME, 2018 WL 5091047 (Ky. App. Oct. 19, 2018).

[6] *Union Light, Heat, & Power Co. v. Blackwell's Adm'r*, 291 S.W.2d 539, 542 (Ky. 1956) (emphasis added).

4

In this case two separate, albeit related, causes of action are involved. As previously discussed, the first cause of action appealed was the DNA matter under KRS[7] 620 *et seq.*, while the current cause of action is a motion to modify a previously established custody order under KRS 403.320(3), in the dissolution action. With regard to whether these actions are separate for the purposes of law of the case, this Court agrees with the conclusion of the Court of Appeals in *S.R. v. J.N., Id.* at 637. *S.R.* held that "[t]he purpose of the dependency, neglect, and abuse statutes is to provide for the health, safety, and overall wellbeing of the child. It is not to determine the custody rights which belong to the parents."[8] Inversely, the purpose of a custody and visitation proceeding is to determine the rights of individuals with standing to seek custody of or visitation with a child. It is not to determine whether or not that child is dependent, neglected, or abused.

We therefore hold that for law of the case purposes DNA actions and custody actions are separate and distinct, notwithstanding that the same child is involved, or that the actions are before the same judge in the same family court. Accordingly, in this case the Court of Appeals' holding in the DNA action did not constitute law of the case for the subsequent visitation proceedings in the dissolution action.

## B. **The trial court did not abuse its discretion.**

---

[7] Kentucky Revised Statues.

[8] 307 S.W.3d 631, 637 (Ky. App. 2010).

Next we must determine whether the family court's ruling in the dissolution action warrants reversal. This Court's review of a custody or visitation action involves a two-step analysis:

> First, we review a trial court's findings of fact under an abuse of discretion standard, only disturbing such findings when they are clearly erroneous. A judgment is not clearly erroneous if it is supported by substantial evidence. Substantial evidence is evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men. Second, we examine the trial court's application of the law de novo.[9]

"[T]he test is not whether the appellate court would have decided it differently, but whether the findings of the family court are clearly erroneous, whether it applied the correct law, or whether it abused its discretion."[10]

In addition to our conclusion that law of the case does not apply, we also note that the Court of Appeals' ruling in the DNA action was entitled to no weight by the family court when it made its subsequent visitation determination in the dissolution action. As noted, following an adjudication hearing in the DNA action a disposition hearing was scheduled, but never occurred. Therefore, the Court of Appeals was acting outside its jurisdiction when it addressed the Father's DNA action appeal on the merits. *J.E. v. Cabinet for Health and Family Services* is on point in this regard, rendering the interlocutory appeal a nullity.[11]

---

[9] *S.E.A. v. R.J.G.*, 470 S.W.3d 739, 742 (Ky. App. 2015) (citations and internal quotation marks omitted).

[10] *Coffman v. Rankin*, 260 S.W.3d 767, 770 (Ky. 2008).

[11] 553 S.W.3d 850 (Ky. App. 2018).

In *J.E.*, the trial court conducted an adjudication hearing in a DNA action and determined that the children involved were dependent, neglected, or abused.[12] A disposition hearing was scheduled, but before it could take place the parents appealed the case to the Court of Appeals; no disposition hearing occurred.[13] Therefore, as a matter of first impression, the court addressed the issue of whether the case was properly appealed or if it was instead interlocutory and required dismissal.[14]

The court began its analysis by noting that under KRS 620.155:

> a parent aggrieved by a proceeding in a dependency, neglect, or abuse case may appeal as a matter of right. The statute, however, does not delineate with particularity the type of proceeding that may be appealed. Juvenile proceedings, **including dependency, neglect, and abuse** (DNA) actions, are bifurcated proceedings, *i.e.*, they consist of two distinct hearings, adjudication and disposition. KRS 610.080.[15]

Accordingly, the court was tasked with determining "whether the rights of all parties are fully adjudicated for purposes of appellate review in the absence of the completion of *both* the adjudication and **disposition hearings**" in accordance with Kentucky Civil Rule of Procedure (CR) 54.01.[16]

---

[12] *Id.* at 851.

[13] *Id.*

[14] *Id.* at 851-52.

[15] *Id.* at 851.

[16] *Id.* at 852.

7

The court held that "a disposition order, not an adjudication order, is the final appealable order with regard to a decision of whether a child is dependent, neglected, or abused."[17] It therefore dismissed the appeal as interlocutory.[18]

Consequently, in the DNA action at issue in this case, the Court of Appeals should have dismissed the Father's appeal as interlocutory, as the rights of the parties had not been fully determined via disposition proceedings. This clear error by the Court of Appeals further bolsters our previous conclusion that the family court was under no obligation to give weight to the Court of Appeals' decision in the DNA action when making its visitation determination in the dissolution action.

Further, our courts have previously held that it is in fact desirable for family courts to keep DNA actions and custody actions separate in their minds for the purposes of fact finding:

> We learn by the case before us that if a family's various causes of action in family courts are not kept distinct by the court's adherence to well-founded rules, parties or the court itself could leverage mere impressions from a prior proceeding into findings in a subsequent one, despite that in the prior action the impression was not sufficient to merit establishment as a judicially noticeable finding of fact. This can and does occur when a party attempts to re-adjudicate custody issues by raising allegations of dependency, abuse, or neglect. Dutifully following well-founded rules of court will prevent such manipulation.[19]

With these principles in mind, we must now address whether the family court's findings of fact in the visitation proceedings were clear error.

---

[17] *Id.* at 853.

[18] *Id.*

[19] *S.R.*, 307 S.W.3d at 638.

During the hearing, which lasted approximately four hours and fifteen minutes, the court heard testimony from the Child's mother, father,[20] paternal grandmother, paternal great aunt, paternal great uncle, and therapist Jennifer Williams (Ms. Williams). The Father's current girlfriend also testified, and the testimony of Dr. Edward Connor (Dr. Connor), a licensed clinical psychologist, was entered into evidence via deposition. There was also testimony through various witnesses that tended to weaken the Mother's credibility that may not have been introduced in the DNA adjudication hearing.[21]

The court made the following relevant findings of fact: the court did not find that sexual abuse occurred in the DNA action; the Child does not associate the Father's absence with abuse, and instead believes he went to work one day and never returned; the Child has expressed a desire to see her father; that children without both a mother and a father can have a number of psychological difficulties; and the Father has several healthy relationships with minor children including his girlfriend's fourteen year old daughter and his infant niece. He routinely cares for these children without supervision and there have been no complaints from those children or their parents.

The court found that it would be in the best interest of the Child to have visitation with the Father. The final portion of the order held: "[t]he Court,

---

[20] We note that the Father did not testify during the DNA action on the advice of counsel. This was therefore the first time the family court heard testimony from him.

[21] We did not have the benefit of the record in the DNA case and therefore did not have the video record of the DNA adjudication hearing. Testimony was introduced in this action that the Mother did not allow the Child to sleep in her own bed because the Mother saw demons under it on one occasion. There was also evidence that she initially called off her wedding to the Father because she thought a balloon at a concert told her she was making a mistake.

considering all of the testimony before the Court does not believe the child would be harmed by visiting with her father, but could be harmed by the absence of a relationship with her father."

It was the family court's first finding of fact, as to whether sexual abuse occurred, that the Court of Appeals held was clear error. We disagree.

The DNA action's order's "findings of fact" section states:

> After an Adjudication Hearing, the Court finds that the allegations contained in the Petition have been proven by a preponderance of the evidence, and hereby makes the following specific findings of fact: The Court finds the petition as true as the child disclosed that her father "spanked" her vagina; the child exhibited fear of the father; the physical exam reveals non-specific notch in child's hymen; and the Court finds a **risk of harm** to the child if returned to the care of her father.[22]

Further, the order's "conclusions of law" section states: "The Court therefore concludes the above named child is neglected or abused as defined in KRS 600.020(1); as follows: her parent...[c]reated or allowed to be created **a risk** that an act of sexual abuse...will be committed on the child."[23] This section of the order is particularly significant. The order is a "check the box" form, and among the options the family court had was a box that stated the child was neglected or abused because his or her parent "**[c]ommitted** or allowed to be committed an act of sexual abuse" upon the child.[24] This box was not checked, meaning that the family court did not find that the alleged act of sexual abuse actually occurred.[25]

---

[22] (emphasis added).

[23] (emphasis added).

[24] (emphasis added).

[25] We also believe it is significant that the order later states, "reasonable efforts to prevent removal were not provided, but **are being made to reunify the family.**"

Often we find that discerning what a lower court judge meant by or intended to do with a particular order is an onerous task. But here, the exact issue of what the family court judge meant by his DNA action order was discussed in the dissolution action when the following exchange occurred:

> **Father's Attorney:** (questioning Ms. Williams) You understand, do you not, that there is no...finding that [the Child] was sexually abused?
>
> [...]
>
> **Mother's Attorney:** Judge I'm going to renew my objection, if you look at the actual [DNA action] order 'sexual abuse' is the term used by the court in its order: "based upon the testimony at the hearing the court finds a continuing risk of harm of sexual abuse if returned to the father...he created or allowed to be created a risk that an act of sexual abuse, sexual exploitation, or prostitution will be committed upon the child."
>
> [...]
>
> **Court:** The court did find a risk of sexual abuse. The court did not find in that case that sexual abuse had occurred.

Given the preceding facts, we are convinced that the family court did not find in the DNA action that the alleged sexual abuse actually occurred. Instead it found that the Father created a risk that an act of sexual abuse would occur. Accordingly, we reverse the Court of Appeals' holding that the family court abused its discretion in the dissolution action when it did not find that sexual abuse occurred in the DNA action.

---

(emphasis added). We interpret this to mean that the family court judge did not believe the Child should never been reunified with the Father.

11

We further hold that the remainder of the court's findings of fact upon which it based its decision to grant visitation were supported by substantial evidence. The finding that the Child believes the Father is absent because he went to work one day and did not return as well as her expressed desire to see her father were both founded upon the Child's therapy notes in Ms. Williams' testimony. Dr. Connor's deposition covered the various developmental issues children with an absent parent can develop. And finally, the Father, the Father's girlfriend, and the Child's paternal grandmother all testified that the Father regularly takes care of his girlfriend's fourteen-year-old daughter and his infant niece. There have been no complaints by the children or their parents, and no one in his life has any reservations about allowing him to keep those children unsupervised.

Therefore, we cannot hold that the family court abused its discretion by finding that an incremental visitation and reunification plan between the Father and the Child was in the child's best interest, as substantial evidence supports the court's findings of fact. We thus reinstate the family court's order for visitation.

## III.   CONCLUSION

We reverse the holding of the Court of Appeals that the family court abused its discretion. The family court's visitation order is hereby reinstated.

Minton, C.J.; Hughes, Keller, Lambert, VanMeter and Wright, JJ., sitting. Nickell, J., recused. Hughes, Keller, Lambert, VanMeter and Wright, JJ., concur.

Minton, C.J., dissents because he would affirm the Court of Appeals' decision to remand this case to the family court with directions to make

12

specific findings to explain why, in light of its adjudication that the father posed a risk of sexual abuse to the child, modification of visitation to require contact with the father promotes the best interests of the child.

COUNSEL FOR APPELLANT:

W. Jeffrey Scott
Whitley Hill Bailey
W. Jeffrey Scott, P.S.C.

COUNSEL FOR APPELLEE:

Tracy Denise Frye
Marie Elizabeth Troxler
Fry Law Offices, P.S.C.