RENDERED:  AUGUST 28, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-001618-ME

CHRISTINE ANN HALL                                                   APPELLANT

v.

APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE DEBORAH DEWEESE, JUDGE
ACTION NO. 12-CI-504007

LAURA KATHRYN HALL
AND CORY MATTHEW PYLES                                               APPELLEES

OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE:  COMBS, GOODWINE, AND LAMBERT, JUDGES.

COMBS, JUDGE:  This case involves a dispute over custody of a child between

the child's aunt and her natural parents.  Christine Hall, the aunt, had shared joint

custody of V.L.K.H. with Laura Hall and Cory Pyles, the child's natural parents.

Christine now appeals an order of the Jefferson Family Court modifying its

previous custody order and granting sole custody to Laura Hall and Cory Pyles and

not granting any visitation for Christine. After our review of the record and the applicable law, we vacate and remand for further proceedings.

V.L.K.H. was born in 2007. The Cabinet for Health and Family Services intervened immediately, and the child was placed in the care of her maternal aunt, Christine Hall. Christine qualified as the child's *de facto* custodian and was awarded permanent custody by court order entered prior to 2012.

In 2016, Laura Hall filed a motion to modify the award of custody to Christine. After a hearing, the family court observed that "communication and cooperation between the parties is uncommonly, admirably, good." By order entered on October 28, 2016, the court modified the custody order and granted joint custody of the child to Christine and to Laura and Cory. The parties were awarded equal parenting time. Because they cohabit, the parenting time awarded to Laura and Cory is shared between them.

As time passed, Cory and Laura became dissatisfied with the parenting-time schedule. In May 2018, Cory filed a motion to modify the parties' timesharing. The motion was set for a hearing to be conducted on June 12, 2019. On that date, Laura orally joined Cory's motion.

At the hearing, Cory explained that he and Laura also permitted Christine to exercise physical custody of C.H. (their younger child and the sibling of V.L.K.H.) whenever V.L.K.H. was in Christine's care. Cory indicated that they

sent C.H. to Christine so that the siblings could grow up together. However, he complained that he and Laura were not given input with respect to the scheduling of their parenting time with V.L.K.H. and that Christine dictated their timesharing according to her work schedule as a registered nurse. Although he described one incident where Christine was observed to be "severely" inebriated at a wedding reception, Cory testified that he had no other concern for the well-being of the children while they were in her care. Cory testified that he had sole custody of his son and that he "want[ed] his daughter back." He felt that it was in the child's best interests to be in the sole custody of her natural parents and that he did not want Christine to exercise joint custody with respect to V.L.K.H.

During cross-examination, Cory admitted that V.L.K.H. was completely integrated into Christine's family and that he routinely deferred to Laura and Christine with respect to all decisions concerning the child. He denied that he was motivated to seek the termination of Christine's custodial rights in an effort to avoid reimbursing the Commonwealth for kinship care benefits paid to Christine by the state.

Upon her examination, Laura testified that she and Christine had worked together for years to determine which school V.L.K.H. would attend, when doctor visits would be scheduled, and when each party would exercise parenting time. However, she complained that she did not want to be the babysitter to her

-3-

own children and that she had agreed to join Cory's motion in order to support him. Laura indicated that she believed that her sister had helped by caring for V.L.K.H. while she (Laura) had been incapacitated by drug abuse, but that now she and Cory wanted sole custody of V.L.K.H.

Laura admitted that the child loved Christine "more than anything" and that Christine's work schedule was a great luxury for the children because she was available to them twenty-four hours a day following her three-day work week. With respect to the wedding reception incident, Laura indicated that Christine appeared intoxicated but admitted that her children had not been in any danger. Laura acknowledged that she had never disagreed with Christine's decisions with respect to V.L.K.H.'s extraordinary healthcare needs[1] and that she and Christine had devised a schedule by which she (Laura) and Cory enjoyed parenting time for approximately fifteen days each month. Laura indicated that if she and Cory were awarded sole custody of V.L.K.H., they could expect help with childcare from their families while they worked.

Upon her examination, Christine testified that neither Laura nor Cory had ever voiced any objection to the arranged timesharing schedule nor had they indicated that they did not want her to exercise custodial rights to the child. She

---

[1] V.L.K.H. is described in the briefs as requiring care for extraordinary medical needs. The court order of October 24, 2016, recites that she suffers from "a rare disorder which renders her medically fragile."

testified that she had never attempted to restrict Laura's and Cory's time with V.L.K.H. or to cut them out of any decisions concerning her healthcare, school issues, or any other matter. Christine indicated that she and Laura consistently attended physician appointments and school conferences together because Cory's work schedule prevented him from participating. While she acknowledged that she had no legal obligation to care for C.H., Christine explained that she had taken care of him for the last eight years out of sheer affection for him and to accommodate the desire of Laura and Cory for the siblings to be raised together. She observed that there had been no substantial change of any sort since the court's award of joint custody in 2016.

In an order entered on August 29, 2019, the family court modified its prior custody award to grant sole custody of V.L.K.H. to Laura and Cory. It found that "sharing custody between the parties is causing significant friction." The court observed that Christine and Laura "appeared to have a comfortable working relationship." But it found that "[Cory] plainly feels cut out of the decision-making process for V.L.K.H. and it is clear his discomfort is impacting the relationships of all involved." The court noted that Laura supported Cory's request for a change of custody.

In its conclusions of law, the court explained that the provisions of KRS[2] 403.340 authorize modification of a custody order only where a **change of circumstances** makes a revision necessary to serve **the best interests of the child**. The court noted that it "is not concerned that either household seriously endangers V.L.K.H.'s physical, mental, moral, or emotional health." Instead, it concluded that the "key questions" are "whether it is in the best interest of the child to grant [Cory's] motion, and whether the harm of a changed environment is outweighed by its advantages." The court addressed these questions as follows:

> Both natural parents wish return of V.L.K.H., while [Christine] wishes to maintain the status quo. **The child's wishes were not presented to the Court.** The child has a close relationship with all three of her caregivers, as well as a close relationship with [C.H.]. [Christine] feels a parental responsibility for V.L.K.H. and wishes to retain the legal status that has placed her in that role for so many years, while [Laura and Cory] wish to put their substance abuse issues behind them and form the nuclear family that they have worked for. V.L.K.H. would not be removed from her school, and she is adjusted to living in the home of her natural parents. None of the parties are [sic] alleged to have impactful mental health problems. [Cory] testified to some fairly severe intestinal health issues but is evidently recovered and does not suffer from impaired functioning. There have been no allegations of domestic violence or abuse. V.L.K.H. has clearly been cared for and nurtured by [Christine] for a substantial amount of her life. For a period of time this was because her natural parents were incapable of caring for her. Since they became capable, [Laura and Cory] recognized the value of the care

---

[2] Kentucky Revised Statutes.

-6-

> provided by [Christine] and the significant relationship formed between her and V.L.K.H.
>
> . . . .
>
> Ultimately, the Court believes the harm of returning full custody to [Laura and Cory] is outweighed by the benefit. This decision was a close one. All parties are appropriate and loving caregivers. The Court believes, however, that the friction between V.L.K.H.'s natural parents and [Christine] will continue to increase without a change in custody. It is in V.L.K.H.'s best interest to take the pressure of cooperation off and hopefully reduce the conflict between the parties.

(Emphasis added.) Christine, who had been primary caregiver to this medically fragile child since birth, was totally divested of her custodial rights. She was awarded **no** visitation.

In denying Christine's subsequent motion to alter, amend, or vacate, the family court rejected her contention that the parties' testimony did not support a finding that there had been a substantial change of circumstances or that the best interests of the child would be adversely affected by any "friction" (as yet non-existent) between the parties. The court explained that Laura and Cory were not "somehow obligate[d] to coordinate schedules and decisions [with Christine] for the remainder of V.L.K.H.'s childhood." It concluded that under the circumstances, Christine's custodial status had simply "expired" and that it was in the child's best interests to grant sole custody to her natural parents. This appeal followed.

The family court is vested with broad discretion in matters concerning custody and visitation. As the fact-finder, it alone has the prerogative of weighing and evaluating the credibility of witnesses and the reliability of evidence. *B.C. v. B.T.*, 182 S.W.3d 213, 219 (Ky. App. 2005). As an appellate court, our review is carefully circumscribed. We may disturb a family court's decisions only where its rulings are arbitrary or unsupported by the law. *See Coffman v. Rankin*, 260 S.W.3d 767, 770 (Ky. 2008).

On appeal, Christine argues that the family court erred in modifying its prior custody award. She contends that there was **no evidence** to support the conclusion that the child's best interests are served by effectively terminating her custodial rights. Nor was there a change in circumstances. We agree.

Christine claims that the family court's decision to grant Laura and Cory sole custody of the child appeared to be "a reward for the natural parents remaining sober." She contends that nothing whatsoever had changed between the 2016 hearing granting the parties joint custody and the 2018 proceedings granting sole custody to Laura and Cory. She highlights the court's references to the wishes of Cory and Laura "to put their substance abuse issues behind them and form the nuclear family that they have worked for."

KRS 403.340(3) provides that:

> the court shall not modify a prior custody decree unless after hearing it finds, *upon the basis of facts that have*

-8-

*arisen since the prior decree or that were unknown to the court at the time of entry of the prior decree, that a change has occurred in the circumstances of the child or his custodian, and that the modification is necessary to serve the best interests of the child.*

(Emphasis added.)

When determining if a change has occurred and whether a modification of custody is in the best interests of the child, the court is directed to consider the following factors set forth in that same statute:

(a) Whether the custodian agrees to the modification;

(b) Whether the child has been integrated into the family of the petitioner with consent of the custodian;

(c) The factors set forth in KRS 403.270(2) to determine the best interests of the child;

(d) Whether the child's present environment endangers seriously his physical, mental, moral, or emotional health;

(e) Whether the harm likely to be caused by a change of environment is outweighed by its advantages to him; and

(f) Whether the custodian has placed the child with a de facto custodian.

KRS 403.270(2) provides that the court "shall determine custody in accordance with the best interests of the child and equal consideration shall be given to each parent . . . ." There is a presumption that joint custody and equally shared parenting time are in the best interest of the child. *Id.* "If a deviation from

equal parenting time is warranted, the court shall construct a parenting time schedule which maximizes the time each parent . . . has with the child and is consistent with ensuring the child's welfare." *Id.*

We agree with Christine that the reasoning of the family court indicates an impermissible and unwarranted preference for Cory and Laura. The biological relationship between V.L.K.H. and her natural parents -- in and of itself -- is not a factor to be considered when determining custody with respect to Christine *versus* Laura and Cory. When the Commonwealth was required to intervene for the child's protection at the time of her birth, Laura and Cory ceded their rights as natural parents to raise and control V.L.K.H. Christine became the child's *de facto* custodian and was eventually named her permanent custodian by the court. Laura and Cory clearly lost their superior rights to custody of V.L.K.H.

The family court considered many of the relevant statutory factors enumerated in the provisions of KRS 403.270. It considered the interaction and interrelationship of the child with Christine, Laura, and Cory, and the younger brother, C.H.; V.L.K.H.'s adjustment and continuing proximity to her homes, school, and community; the mental and physical health of all the individuals involved; and the motivation of each of the parties. The family court referred to the fact that Christine had cared for and nurtured V.L.K.H. since her birth and mentioned the inability of Laura and Cory to do either for a substantial period of

-10-

V.LK.H.'s childhood.  Nonetheless, it found the final factor enumerated in the provisions of KRS 403.270(2) to be "key to [its] decision."  KRS 403.270(2)(k) directs the court to consider the "likelihood a party will allow the child frequent, meaningful, and continuing contact with the other parent . . . ."  The court wrote as follows:

> Although this Court is returning custody of V.L.K.H. to her biological parents, it recognizes the length, breadth, and depth of her relationship with [Christine]. [Christine] was a lifeboat for this child on seas made stormy by the actions of her parents.  Without the love, care, and hard work of [Christine], V.L.K.H.'s life would be very different.  The relationship they have is significant, and it is a life-long bond.  [Laura and Cory] should be aware of this fact, and they should treat that bond with the respect it deserves.  Although this Court is returning full custody, it expects that [Christine] will remain an incredibly significant part of V.L.K.H.'s life, and will see her regularly.

Under the circumstances, we are not persuaded that this factor could have been regarded as "key" to the family court's custody decision.  The parties agreed that the parenting time arrangements had been discussed between Christine and Laura each month for years; that Cory had elected to take a hands-off approach; and that neither Laura nor Cory had raised an objection with Christine as to the timesharing schedule.  There simply does not appear to be an indication that any party would be any more or less likely to allow the child "frequent, meaningful, and continuing contact with the other parent."  Significantly, the court

-11-

expressed its wish for Christine's continued involvement in merely precatory language without mandating visitation for her with the child. The best interests of the child were clearly disregarded -- if not severely jeopardized -- by suddenly severing her relationship from her beloved aunt.

Similarly, we are not persuaded that the family court's modification of the joint custody award was properly based upon an assumed development of "friction" between the parties. The family court concluded that the "harm of returning full custody to [Laura and Cory] was outweighed by the benefit." The benefit to V.L.K.H. was attributed to a presumed reduction in "the conflict between the parties." However, beyond Cory's "resentment over having to accommodate [Christine's] work schedule" and his "discomfort" at feeling left out of decision-making, there does not appear to be any conflict between or among the parties. In fact, the family court expressly noted that Laura and Christine continued to enjoy "a comfortable working relationship." Furthermore, it acknowledged that "[Christine] works 12-hour shifts as a nurse – from 7:00 a.m. to 7:00 p.m." and that "requiring her to care for V.L.K.H. [and C.H.] on days she works would pose severe logistical difficulties and significant childcare costs."

As the Supreme Court of Kentucky has observed, "[w]hile we have no doubt of the greater likelihood of successful joint custody when a cooperative spirit prevails, we do not regard it as a condition precedent." *Squires v. Squires*, 854

-12-

S.W.2d 765, 768 (Ky. 1993). To do so, the Court opined, "would permit a party who opposes joint custody to dictate the result by his or her own belligerence . . . ." *Id.* It concluded that requiring goodwill between the parties prior to an award of joint custody "would have the effect of virtually writing it out of the law." *Id.* at 769.

We cannot uphold the family court's decision to modify the joint custody award based on a speculative assumption that a lack of cooperation between the parties will develop into "friction" where there is no evidence of a real disagreement among them. This reasoning is simply insufficient to warrant or to justify a modification.

Therefore, we VACATE the order of the Jefferson Family Court and REMAND this case for further consideration. Upon remand, the family court is directed to reassess its modification decision keeping in mind that under the circumstances of this case, Laura and Cory do not have superior rights to custody solely by virtue of their status as biological parents and that the provisions of KRS 403.340(6) require that where a court orders a modification of a child custody decision, there shall be a presumption that it is in the best interests of the child for the parents/custodians to share joint custody.

ALL CONCUR.

-13-

BRIEF FOR APPELLANT:

Thomas V. Haile
Louisville, Kentucky

BRIEF FOR APPELLEE LAURA
KATHRYN HALL:

Bryan Gowin
Louisville, Kentucky

BRIEF FOR APPELLEE CORY
MATTHEW PYLES:

John M. Mayer, Jr.
Clarksville, Indiana