RENDERED: DECEMBER 2, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1199-MR

LACI VALANDINGHAM                                          APPELLANT

v.       APPEAL FROM CARTER FAMILY COURT
         HONORABLE DAVID D. FLATT, JUDGE
         ACTION NO. 13-CI-00359

BRADLEY MARSH                                               APPELLEE

AND

NO. 2020-CA-1201-MR

LACI VALANDINGHAM                                          APPELLANT

v.       APPEAL FROM CARTER FAMILY COURT
         HONORABLE DAVID D. FLATT, JUDGE
         ACTION NO. 15-CI-00318

ROBERT BURCHETT                                             APPELLEE

\*\* \*\* \*\* \*\* \*\*

BEFORE:  GOODWINE, K. THOMPSON, AND L. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  Laci Valandingham appeals from orders of the Carter Family Court denying her requests for joint custody and for equal timesharing of two of her children in two separate appeals.  We affirm the family court.

Valandingham has three children with three different fathers:  K.M. (age seven)[1] whose father is Bradley Marsh; K.B. (age five) whose father is Robert Burchett; and a third child whose father is Jordan Ratcliff.  When we refer to the fathers, we are referencing Marsh and Burchett; when we refer to the children, we are referencing K.M. and K.B.

These appeals concern custody and timesharing of K.M. (Case No. 2020-CA-1199-MR) and K.B. (Case No. 2020-CA-1201-MR).  These appeals were consolidated by order dated April 14, 2021.  Marsh currently has sole custody of K.M., Burchett currently has sole custody of K.B., and Valandingham has a visitation schedule for the children consistent with the guidelines of the family court.

---

[1] The ages of the children provided are those at the time of the testimony provided for the relevant orders being appealed.

In 2013, in Case No. 2020-CA-1199-MR, Marsh filed a petition to establish joint custody and visitation. On January 2, 2014, Marsh and Valandingham entered an agreed order which gave the parties joint custody and timesharing.

In 2016, Marsh filed a motion to modify custody and timesharing, and on April 13, 2017, the family court entered an order giving Marsh full legal custody and giving Valandingham supervised visitation. Later in 2017, the parties entered an agreed order giving Valandingham additional visitation with K.M. consisting of two nights of visitation per week. This schedule remained the same for two years.

In 2015, in Case No. 2020-CA-1201-MR, Burchett filed a petition for custody. Burchett and Valandingham executed a temporary agreement giving the parties joint custody of K.B. and giving Valandingham timesharing on the weekends. Later that year, the family court ordered that custody continue in this same manner.

On December 1, 2015, Burchett filed an emergency motion to modify timesharing as to K.B. based on screenshots of messages he received from Marsh showing Valandingham and her current boyfriend smoking marijuana and drinking alcohol while both children were in her care and custody. The family court denied this motion on December 7, 2015, based on jurisdictional issues.

In February 2017, K.B. was placed with Burchett through a prevention plan prepared by the Cabinet for Health and Family Services (the Cabinet) resulting from an incident in which children were present while Ratcliff (the father of Valandingham's third child) overdosed on heroin (after overdosing once already that morning). The police report states that when troopers arrived on the scene, one child was asleep and the other was sitting on a couch.

On February 27, 2017, Burchett filed a motion to modify custody. Burchett's March 27, 2017 affidavit states that he filed the motion for modification of custody after learning of the heroin overdose and stated that there was other suspicious activity at Valandingham's house in March 2017, including several men shooting firearms, Ratcliff walking around with a shotgun, and individuals carrying things to the residence and leaving empty-handed.

A hearing regarding this motion was held on April 10, 2017, and the family court entered an order on April 13, 2017, granting full custody of K.B. to Burchett, and giving Valandingham supervised timesharing with K.B. twice a week. On July 19, 2017, the family court held a hearing regarding child custody and visitation, and the parties reached an agreement giving Valandingham visitation with K.B. two nights each week.

In a July 20, 2017 order, Valandingham was restrained from allowing K.B. or K.M. from having any form of contact with Ratcliff or Boomer Cathey,

-4-

another convicted felon who was present during the overdose incident. Valandingham was further prohibited from having any boyfriend stay overnight and from consuming or allowing others to consume drugs or alcohol with the children present.

The status when we reach the proceedings relevant to these appeals is that fathers had custody and Valandingham had visitation. On May 12, 2020, Valandingham filed a motion to modify custody and timesharing of children. The hearing was held on June 10, 2020 via Zoom and all parties were present with counsel.

At this hearing, Valandingham testified that she was capable of co-parenting with both Marsh and Burchett, but the fathers testified that they could not co-parent with Valandingham. Though Valandingham stated that she was involved in the children's educations and medical decisions, she could not remember the names of the children's teachers or their grades. Valandingham's parents and friends testified that they have no concerns about her ability to parent, but the family court later pointed out that Valandingham's parents also had no concerns about her ability to parent in 2017 during the time that the children were present while an adult overdosed when they were in her custody. The fathers testified that the children return home from visitation unbathed and in dirty clothes.

Finally, the fathers testified that both children are happy and well-adjusted to their current living arrangements and visitation schedules and perform well in school.

On June 24, 2020, the family court entered an order holding that it was contrary to the best interest of the children to modify custody or visitation. On July 6, 2020, Valandingham filed a motion to alter, amend, or vacate and a motion for additional findings. This motion was denied on September 10, 2021. Valandingham appealed.

Courts have broad discretion in determining custody modifications because they are in the best position to resolve conflicting evidence and make the determination of the child's best interest. *Pennington v. Marcum*, 266 S.W.3d 759, 769 (Ky. 2008). In reviewing the family court's decision, the test is not whether the appellate court would have decided the issue differently, but whether the findings of the family court are clearly erroneous and whether when applying the facts to the law, the court abused its discretion. *Coffman v. Rankin*, 260 S.W.3d 767, 770 (Ky. 2008). A finding of fact is not clearly erroneous if it is supported by substantial evidence. *Hunter v. Hunter*, 127 S.W.3d 656, 659 (Ky.App. 2003). So long as the family court properly considers the mandate of Kentucky Revised Statutes (KRS) 403.270, including giving due consideration to all relevant factors, we will defer to its decision if it is neither clearly erroneous nor an abuse of discretion. *Barnett v. White*, 584 S.W.3d 755, 759 (Ky.App. 2019).

Courts similarly have broad discretion in determining timesharing modifications. *Pennington*, 266 S.W.3d at 769. As such, this Court "will only reverse a trial court's determinations as to visitation if they constitute a manifest abuse of discretion, or were clearly erroneous in light of the facts and circumstances of the case." *Drury v. Drury*, 32 S.W.3d 521, 525 (Ky.App. 2000). Moreover, "[d]ue regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *Humphrey v. Humphrey*, 326 S.W.3d 460, 463 (Ky.App. 2010).

Valandingham first argues that the family court did not make sufficient findings of fact in the order denying her a custody and visitation modification. A family court must make findings of fact to support its conclusions of law: "In all actions tried upon the facts without a jury . . . the court shall find the facts specifically and state separately its conclusions of law thereon and render an appropriate judgment." Kentucky Rules of Civil Procedure (CR) 52.01. "[T]he intent of CR 52.01 is to direct judges in cases tried by the court without a jury to make separate findings of fact and conclusions of law whenever they render a judgment on the merits . . . . And certainly, a determination regarding modification of custody is a judgment on the merits." *Anderson v. Johnson*, 350 S.W.3d 453, 456 (Ky. 2011).

Here, the family court conducted a hearing and concluded that joint custody was not in the best interest of the children. This conclusion was supported by the following facts regarding K.M. in the family court's order in Case No. 2020-CA-1199-MR:

> 3. The Court took notice of evidence presented at prior hearings involving theses [sic] parties and limited testimony to events occurring in the most recent two years.
>
> . . . .
>
> 5. Respondent testified that she is involved with the child's educational, medical, and extracurricular activities, however, there [is] credible evidence to the contrary presented by Petitioner.
>
> 6. Respondent's parents testified they had no concerns with her ability to parent the child. It is noted that they also had no previous concerns when such concern would certainly have been justified.
>
> 7. The child is happy and well[-]adjusted in his current environment and living situation. The child does well in school and has a good relationship with both parents and extended families.
>
> 8. There was testimony that the child is returned from visits with the mother with poor hygiene and dirty clothes.
>
> 9. Respondent's payment of child support has been sporadic at best and collection results mostly from intercepted tax refunds.

10.  Petitioner's mother testified regarding her son's care of the child.  Petitioner provides the child with all of his needs and by all accounts is an excellent parent.

Similarly, the conclusion was supported by the following facts regarding K.B. in the family court's order in Case No. 2020-CA-1201-MR:

1.  Valandingham communicates with Burchett regarding the child's educational and medical decisions and her parents testify that they have no concerns regarding her parenting, but she does not recall the name of the child's teacher, is unsure of his grades, has misplaced his homework assignments, and does not recall the name of the child's physician.

2.  Both appellee fathers have testified that the children are well-adjusted to their current living and visitation schedules.

3.  Burchett testified that the child often comes home in unwashed underwear, with his hair uncombed and dirt under his fingernails.

4.  Both fathers testified that Valandingham does not consistently pay child support and that they only receive payment when her taxes are garnished.

5.  Both fathers do not believe that they could co-parent with Valandingham.

6.  Marsh testified to the same concerns about Valandingham's parenting as Burchett.

Based on these findings, the family court properly concluded that both children are well-adjusted and thriving; Valandingham has not demonstrated a change in circumstances such that a modification of custody or visitation is

warranted; and considering the factors in KRS 403.270, it is in the children's best interest to continue to allow Marsh and Burchett continued sole custody. The family court did not delineate each factor in KRS 403.270, but clearly considered the factors as a whole. The family court did not merely "address the matter in a perfunctory manner." *Anderson*, 350 S.W.3d at 458. These findings sufficiently support the final conclusion that it would be contrary to the best interest of the children to change or modify custody or living arrangements.

Valandingham next argues that she should be granted joint custody of both children. Child custody is the care, control, and maintenance of the child, and in joint custody, "both parents possess the rights, privileges, and responsibilities associated with parenting and are expected to consult and participate equally in the child's upbringing." *Pennington*, 266 S.W.3d at 764. Two years after the entry of the custody decree, a family court may modify a prior custody decree if it finds "that a change has occurred in the circumstances of the child or his custodian, and that the modification is necessary to serve the best interests of the child." KRS 403.340(3). Under this statute, the family court may consider the following:

(a) Whether the custodian agrees to the modification;

(b) Whether the child has been integrated into the family of the petitioner with consent of the custodian;

(c) The factors set forth in KRS 403.270(2) to determine the best interests of the child;

-10-

(d) Whether the child's present environment endangers seriously his physical, mental, moral, or emotional health;

(e) Whether the harm likely to be caused by a change of environment is outweighed by its advantages to him[.]

As to KRS 403.340(3)(a), Valandingham argues that while neither father has agreed outright to modification, that their actions in allowing her to take the children to the pediatrician, dentist, and to access their medical and school records functions as their consent to joint custody. We disagree. It cannot be said that the appellee fathers' allowing Valandingham access to some custodial responsibilities is an agreement to her having joint custody.

As to KRS 403.340(3)(b), Valandingham argues that the children are integrated into her family. Witnesses, including Valandingham's friend and mother, testified that the children are well-integrated. However, this is only one factor to consider in the modification decision. Under KRS 403.340(3)(c), modification of child custody requires an evaluation of the best interest of the child under KRS 403.270(2), which involves analysis of another statutory list of factors. It is well-established that KRS 403.270(2) "provides a list of non-exclusive, demonstrative factors to be considered in custodial determinations." *Frances v. Frances*, 266 S.W.3d 754, 756 (Ky. 2008). KRS 403.270(2) provides in relevant part:

The court shall determine custody in accordance with the best interests of the child and equal consideration shall be given to each parent . . . .  If a deviation from equal parenting time is warranted, the court shall construct a parenting time schedule which maximizes the time each parent . . . has with the child and is consistent with ensuring the child's welfare.  The court shall consider all relevant factors including:

> (a) The wishes of the child's parent or parents . . . as to his or her custody;
>
> (b) The wishes of the child as to his or her custodian, with due consideration given to the influence a parent or de facto custodian may have over the child's wishes;
>
> (c) The interaction and interrelationship of the child with his or her parent or parents, his or her siblings, and any other person who may significantly affect the child's best interests;
>
> (d) The motivation of the adults participating in the custody proceeding;
>
> (e) The child's adjustment and continuing proximity to his or her home, school, and community;
>
> (f) The mental and physical health of all individuals involved;
>
> . . .
>
> and
>
> (k) The likelihood a party will allow the child frequent, meaningful, and continuing contact with the other parent[.]

The family court made findings relating to KRS 403.340(3)(c) by analyzing the KRS 403.270(2) best interest factors, finding that: the appellee fathers do not want Valandingham to be awarded joint custody; the children are happy and well-adjusted in their present environment; Valandingham repeatedly fails to pay child support; both children were present when an adult overdosed while they were entrusted to Valandingham's care; and the children's physical health and hygiene suffer while in her custody. The family court did not abuse its discretion in reaching this conclusion because these factors sufficiently weigh toward joint custody not being in the best interest of the children.

Finally, as to KRS 403.340(3)(d) and KRS 403.340(3)(e), whether the children's present environment endangers seriously their physical, mental, moral, or emotional health, and whether the harm likely to be caused by a change of environment is outweighed by its advantages, the family court was clear that the children are happy and thriving in the present environment. The family court found that the children are doing well in school and the fathers testified that they are well-adjusted. Furthermore, the family court was clear that the change in custody would be detrimental to the children and would disturb the current schedule and environment in which they are thriving.

Our review of the orders on appeal establishes that the family court considered the evidence as a whole, including the children's health and stability, in

-13-

reaching its custody modification determination. Accordingly, we cannot conclude that the court's findings of fact were clearly erroneous or that the family court's application of the facts to the determination of the children's best interest constitutes an abuse of discretion.

Valandingham further argues that there is a presumption of joint custody in a modification of custody case. However, "KRS 403.340[(5)] states[:] '*if* the court orders a modification of a child custody decree, there shall be a presumption, rebuttable by a preponderance of evidence, that it is in the best interest of the child for the parents to have joint custody[.]'" *Berzansky v. Parrish*, 583 S.W.3d 6, 8 (Ky.App. 2019). Valandingham's statement that Kentucky has a presumption of joint custody misstates the statute. The "plain and unambiguous language of the statute creates a rebuttable presumption only *after* the court determines that a modification of an existing custody decree is in the child's best interest." *Id*. Here, there has been no modification of the custody decree, so the presumption of custody under KRS 403.340(5) is not applicable.

Finally, Valandingham argues that she should be granted equal timesharing of both children. KRS 403.270 and KRS 403.320 address separate stages of custody proceedings: (1) "the initial custody determination[,]" and (2) "modification of visitation or timesharing." *Layman v. Bohanon*, 599 S.W.3d 423, 430 (Ky. 2020). For each stage, there is a different standard established. Under

-14-

KRS 403.270, an initial custody determination requires analysis of the best interest of the child with a rebuttable presumption that joint custody and equal timesharing are in a child's best interest. This statute is not applicable here. Here, as in *Layman*, the family court was being asked to consider a modification of visitation. 599 S.W.3d at 431. "Accordingly, the [] presumption of joint custody and equal parenting time in KRS 403.270 applies to custody determinations, but it *does not apply* to modifications of visitation or timesharing." *Id*. (emphasis added).

Modification of visitation or timesharing falls under KRS 403.320 and requires that the change be in the child's best interest, "unless the modification is 'less than reasonable[.]'" 599 S.W.3d at 430. "Less than reasonable" means that the child's physical, mental, moral, or emotional health is seriously endangered. *Id*. Furthermore, "less than reasonable does not necessarily mean less than fifty percent parenting time." *Id*. (citations omitted). There is no formula for what is reasonable, and each timesharing case must be decided based on the unique circumstances of each case. *Drury*, 32 S.W.3d at 524.

Based on the facts of this case, we cannot say that the current visitation schedule that Valandingham has with the children is not in the children's best interest or that it is less than reasonable. She does not enjoy equal timesharing, but less than a fifty-percent split is not unreasonable. The children's physical, mental, moral, and emotional health is not endangered under the present

-15-

visitation schedule, and after hearing testimony and reviewing the facts, the family court found that it was in the children's best interest to maintain the stability of the current visitation arrangements. Again, we conclude that the family court's findings of fact were not erroneous, and that the determination of the children's best interest was not an abuse of discretion.

For the foregoing reasons, the orders of the Carter Family Court are affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

R. Stephen McGinnis
Erin N. Hall
Greenup, Kentucky

BRIEF FOR APPELLEE BRADLEY MARSH:

Robert W. Miller
Grayson, Kentucky

BRIEF FOR APPELLEE ROBERT BURCHETT:

Derrick E. Willis
Grayson, Kentucky