RENDERED:  DECEMBER 18, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1450-MR

PRESTON BROWN          APPELLANT

APPEAL FROM JEFFERSON CIRCUIT COURT
v.     HONORABLE LAUREN ADAMS OGDEN, JUDGE
ACTION NO. 18-CI-503456

CHAQUISHA WASHINGTON          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, DIXON, AND K. THOMPSON, JUDGES.

ACREE, JUDGE:  Preston Brown appeals the Jefferson Family Court's August 1, 2019 order awarding sole custody of his two minor children to their mother, Chaquisha Washington, and granting him supervised visitation.  After careful consideration, we affirm.

# BACKGROUND AND PROCEDURE

Brown and Washington are the biological parents of the two minor children at issue in this appeal, P.T.B. and L.L.B., ages fourteen and ten at the time the family court entered its custody award. The children have lived with Washington since birth. The family court found that Brown lived with Washington and the children on occasion, but was always heavily involved in the children's day-to-day care. (Trial Record ("T.R.") at 39).

Brown and Washington have a history of physical violence. In July 2018, Washington petitioned for an order of protection on behalf of herself and the two children against Brown. As Washington alleged in her petition:

> I [Washington] am filing obo myself and my daughters against [Brown]. [Brown] and I have children in common, we were living together but presently do not. Today July 18, 2018 he [Brown] beat me, hit me in the head multiple times, in front of my kids. He left a knot on my forehead. He pulled/ripped my shirt off, then he had a knife pointed/aimed at me and said he was going to kill me or take one of my fingers off. My kids were not present at the time he held the knife to me, but he did tell my girls that he was going to kill me. He put me in the hallway bathroom and said he was going to cut my hair off with some clippers. One of my daughters came back in the house and was asking him not to do anything to me. She said "Don't do anything to my mom" He [sic] told her to go back outside, but she did not, he then told me to go back in the bathroom, he had the knife in his back pocket. I let him go first, when he got in the bathroom he picked up the hair clippers and once again said I am going to cut your hair off, I am going to humiliate you. After that my daughter that he told to go outside, was crying, he began

to calm her down, meanwhile he return to the bathroom where I was at, saying again that he was going to cut my hair, I was able to run out from the hallway, he pulled my shirt and ripped it, it was completely hanging off of me, he was yelling and screaming saying "B**** get back here," saying "I gotcha" I was able to struggle enough to get away, jumped down the steps and ran to neighbors doors knocking for help. . . .

(T.R. Resp. Ex. 1).

The family court held a hearing and entered a DVO against Brown to protect Washington and the children. The court awarded Washington temporary custody of the children and granted Brown supervised contact at Children's Safe Haven every other Monday. (No. 18-D-502118-001) (T.R. Resp. Ex. 2). Brown moved to alter, amend, or vacate, and for additional findings of fact. The family court declined to amend the DVO, but made the following findings:

> The court finds, by a preponderance of the evidence, that domestic violence and abuse did occur and is likely to occur again given the past incidents to which [Washington] testified over their fourteen[-]year relationship, for which the children were present. Further, regarding the finding for [Washington] to have temporary sole custody, it is in the best interests of the children given the no contact order between [Washington] and [Brown] and the risk of further exposure of the children to domestic violence and abuse, for [Washington] to serve as the temporary sole custodian.

(No. 18-D-502118-001, Order entered October 2, 2018).

Two months later, Brown filed a petition seeking joint custody and equal parenting time. A final custody hearing was held on July 26, 2019, and the

family court heard testimony from Brown, Washington, P.T.B., and L.L.B.[1]  It also took judicial notice of all findings and orders in the companion domestic violence case.

Because of the DVO entered against Brown, the family court determined that the presumption of joint custody did not apply.  KRS[2] 403.315. Applying KRS 403.270(2), the court concluded it would be in the best interest of the children for Washington to have sole custody.  In addition, the court found "it would be in the children's best interest for the current supervised parenting arrangement to remain in effect but increased to every Monday at Children's Safe Haven."  Brown moved to alter, amend, or vacate the order.  The motion was denied.  This appeal followed.

## ANALYSIS

Brown alleges the family court erred by granting Washington sole custody of the children and by awarding him visitation that is not reasonable.  We disagree.

On appellate review of a custody determination, much deference is accorded the family court.

> Since the family court is in the best position to evaluate the testimony and to weigh the evidence, an appellate

---

[1] The family judge interviewed the minor children individually in her chambers.

[2] Kentucky Revised Statutes.

court should not substitute its own opinion for that of the family court. If the findings of fact are supported by substantial evidence and if the correct law is applied, a family court's ultimate decision regarding custody will not be disturbed, absent an abuse of discretion. Abuse of discretion implies that the family court's decision is unreasonable or unfair. Thus, in reviewing the decision of the family court, the test is not whether the appellate court would have decided it differently, but whether the findings of the family court are clearly erroneous, whether it applied the correct law, or whether it abused its discretion.

*Coffman v. Rankin*, 260 S.W.3d 767, 770 (Ky. 2008) (citing *B.C. v. B.T.*, 182 S.W.3d 213, 219-20 (Ky. App. 2005)). The same standard applies to a family court's visitation decision. *B.S.S. v. K.S.*, 599 S.W.3d 858, 863 (Ky. 2020).

Before analyzing the merits of Brown's appeal, we address Washington's waiver argument. Washington asserts Brown waived his right to appeal custody and visitation because he advised the court on multiple occasions that he would accept whatever degree of custody and visitation he could get.

On direct examination, the following exchange took place between Brown and his counsel:

Counsel: What are your wishes as to custody?

Brown: I would like joint custody, because I love my kids . . . but I will take what I can get, just seeing and being there with my kids, that's what I want.

Counsel: What about a parenting schedule, what kind of time would you like to have with your children?

Brown: I'll take a parenting schedule, um, anytime I can get. [inaudible]. Just as long as I'm able to have my kids around me. I just aint had time to be with them, just us. Instead of just being in a room with strange people.

(Video Record ("V.R.") 07/26/19; 9:30:10-9:33:00).

Then, on cross examination:

Counsel: You don't have a specific, um, parenting schedule that you have in mind?

Brown: Um, in my mind, that's all I wanted, the main thing I wanted is just half and half, but I will take whatever I am able to get, you know what I'm saying? Anything I can get.

(V.R. 07/26/19; 9:42:41-9:43:01). Again, during closing arguments, Brown's counsel said, "[W]e ask for equal parenting time, but my client and I have said over and over we are flexible to whatever this court wants to give."

Relying on *Tackett v. Commonwealth*, Washington contends Brown's statements "invited" the family court's decision on custody and visitation, which estops him from raising them before this court. 445 S.W.3d 20, 28 (Ky. 2014) (noting that invited errors reflect a "knowing relinquishment of a right" and amount to a waiver). We disagree.

Brown's petition for custody clearly demonstrates his desire for joint custody and equal parenting time. The statements relied upon by Washington do not prohibit the relief he sought in the family court, nor do they prohibit such relief

in this Court.  Brown consistently stated his desire for joint custody and equal

parenting time, but that he would be grateful for whatever he could get.  This does

not amount to an invitation of the family court's custody and visitation decision.

Accordingly, we will address his concerns.

*Custody*

> KRS 403.270(2) states, in pertinent part:
>
> The court shall determine custody in accordance with the best interests of the child and equal consideration shall be given to each parent and to any de facto custodian.  Subject to KRS 403.315, there shall be a presumption, rebuttable by a preponderance of evidence, that joint custody and equally shared parenting time is in the best interest of the child.

Brown acknowledges the presumption of joint custody does not apply because of

the DVO entered against him.  Nevertheless, he contends *Chalupa v. Chalupa*

stands for the proposition that the family court should have started its best interest

analysis with a preference for joint custody.  830 S.W.2d 391 (Ky. App. 1992),

*abrogated on other grounds by Fenwick v. Fenwick*, 114 S.W.3d 767 (Ky. 2003).

We find no merit in this argument.

The legislature amended and re-enacted KRS 403.270 after *Chalupa*

was decided.  In conjunction with KRS 403.315, it clearly prohibits the family

court from presuming joint custody if a DVO has been entered against one party by

the other.  Brown's position would eliminate the application of KRS 403.315

which now makes the first consideration whether a DVO is about to be or has been entered. This does not create, however, a presumption of sole custody, but no presumption at all. Here, the family court appropriately conducted its analysis without presuming that either joint custody or sole custody was in the children's best interest.

Brown next asserts the family court's finding that sole custody was in the best interest of the children is not supported by substantial evidence, and such an award amounted to an abuse of discretion. Specifically, he alleges that many of the factors in KRS 403.270(2) were not considered. Again, we disagree.

Brown argues that the family court did not ascertain the wishes of Washington or the children under KRS 403.270(2)(a)-(b). However, the court heard testimony from both Washington and the children. Washington adamantly argued against the presumption of joint custody and was present to defend against Brown's petition for custody. Additionally, the family court interviewed the children, both of whom noted their satisfaction with the current parenting and visitation schedule, except for the oldest child preferring to see her father every Monday instead of every other Monday. (T.R. at 39).

The family court also analyzed the relationship between the children and both parents. KRS 403.270(2)(c). It noted both parties were heavily involved in the children's day-to-day care. It further found Washington maintained the

-8-

household, while Brown would occasionally accompany them to school conferences, appointments, the park, and cook dinner. The family court found Brown currently resided with his mother, and that neither child seemed bonded to their grandmother. In addition, neither child wanted visitation to be moved to their grandmother's house, indicating it would be best for the children to remain primarily in Washington's household, where they have lived their entire lives. KRS 403.270(2)(e). The family court found the children did not have behavioral or emotional problems in their current living situation. KRS 403.270(2)(f).

The family court placed great emphasis on KRS 403.270(2)(g), which allows the court to consider:

> A finding by the court that domestic violence and abuse, as defined in KRS 403.720, has been committed by one (1) of the parties against a child of the parties or against another party. The court shall determine the extent to which the domestic violence and abuse has affected the child and the child's relationship to each party, with due consideration given to efforts made by a party toward the completion of any domestic violence treatment, counseling, or program . . . .

KRS 403.270(2)(g).

As noted above, the family court took judicial notice of the findings of fact in the DVO case, which included the finding of a "risk of further exposure of the children to domestic violence and abuse." Additionally, Brown acknowledged before the court that he did commit certain acts of domestic abuse against

-9-

Washington, and at least once in the presence of his children. L.L.B. informed the court that the incident made her upset and hurt her feelings. (V.R. 07/26/19; 11:00:40-11:00:52). And, both children preferred to maintain visitation at Children's Safe Haven, where they would feel more comfortable. (T.R. at 39); (V.R. 07/26/19; 10:42:35-10:43:45; 11:00:00 - 11:00:10).

Brown argues the family court did not give weight to his rehabilitation efforts. This is not true. The family court noted that Brown had enrolled and completed the Batterer's Intervention Program. Nevertheless, this does not make the fact that Brown perpetrated violence in the presence of his children go away, nor does it serve as a guarantee it will never happen again with similar harmful emotional and physical repercussions on the children.

Lastly, the court also noted the DVO "prevents the parties from communicating. This makes co-parenting difficult, if not impossible." KRS 403.270(2) is not an exhaustive list and it was appropriate to give weight to this factor. Based on the foregoing, we conclude the family court's finding that sole custody was in the best interest of the children is supported by substantial evidence.

*Visitation*

Based on the same reasons as its custody determination, the family court found it was in the children's best interest that Brown be awarded supervised

visitation with his children every Monday at Children's Safe Haven. Brown contends this finding was clearly erroneous and asks this Court to remand with instructions to enter an order granting unsupervised visitation.

> (1) A parent not granted custody of the child and not awarded shared parenting time under the presumption specified in KRS 403.270(2), 403.280(2), or 403.340(6) is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger seriously the child's physical, mental, moral, or emotional health. Upon request of either party, the court shall issue orders which are specific as to the frequency, timing, duration, conditions, and method of scheduling visitation and which reflect the development age of the child.
>
> (2) If domestic violence and abuse, as defined in KRS 403.720, has been alleged, the court shall, after a hearing, determine the visitation arrangement, if any, which would not endanger seriously the child's or the custodial parent's physical, mental, or emotional health.

KRS 403.320(1)-(2).

For the same reasons articulated in affirming the custody award, including the DVO, and taking into account the children's desire that visitation occur at Children's Safe Haven and their lack of a bond with their paternal grandmother with whom Brown presides, we find the family court's award of supervised visitation is supported by substantial evidence.

-11-

## CONCLUSION

The Jefferson Family Court's August 1, 2019 order awarding

Washington sole custody and granting Brown supervised visitation is affirmed.

ALL CONCUR.


BRIEF FOR APPELLANT:       BRIEF FOR APPELLEE:

Zackary McKee                Dorislee Jackson Gilbert
Louisville, Kentucky          Louisville, Kentucky