RENDERED: APRIL 10, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0124-MR

BRANDEN SPRATT      APPELLANT

v.      APPEAL FROM GRAYSON CIRCUIT COURT
HONORABLE BRUCE T. BUTLER, JUDGE
ACTION NO. 21-CI-00018

EMILY GORDON      APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, McNEILL, AND MOYNAHAN, JUDGES.

CALDWELL, JUDGE: Branden Spratt appeals from an order granting Emily Gordon sole custody of their two minor children and awarding her child support. We affirm.

## FACTS

Branden Spratt ("Father") and Emily Gordon ("Mother") have two young children. The parties' marriage was dissolved by the Grayson Circuit Court

in late 2021. The divorce decree incorporated their separation agreement, which provided for joint custody.

The separation agreement also stated the parents agreed not to vaccinate the children or obtain social security numbers for them until the children reached the age of majority and could decide for themselves. It also required that both parties' consent was necessary before the children could be enrolled in any formal schooling program. Mother later filed motions to allow her to get the children vaccinated and to obtain social security numbers for them. She also filed motions requesting that she be awarded sole custody and child support.

In late 2024, the Grayson Circuit Court entered a final and appealable order adopting the recommendations of the Domestic Relations Commissioner ("DRC") that Mother be awarded sole custody and child support.

The court's order adopting the DRC's recommendations discussed the court's reasoning for concluding that decision-making authority must be vested in one parent rather than both parents. The court noted the children were facing major turning points in their lives. The court found that the parties had different beliefs about what was best for their children, and it had become increasingly difficult for them to engage in joint decision-making over the past few years. The court also found that due to the parties' disagreements: "The result has been that their girls are probably missing out on major educational and recreational

-2-

opportunities, and when they do get the opportunity to participate in some activity, it is often over [Father's] objection, putting [Mother] at risk of being found in contempt."  (Pages 2-3 of Order entered 12/30/2024 attached at Tab 1 to Appendix to Appellant red brief; also Record on Appeal, ("R"), p. 523-24).

After concluding it was necessary for one party to be awarded sole custody, the circuit court further noted the children had been primarily living with Mother since the divorce.  It also found that other than the disagreements with Father over custodial decisions, there had been no serious issues with Mother's home.  The court concluded it would be in the children's best interests to continue their current living arrangement.  It granted sole custody to Mother.

Father filed a timely appeal from the award of sole custody to Mother.  He argues the circuit court failed to consider material testimony from his witnesses, rewarded contemptuous conduct by Mother, and failed to make statutorily required findings for modifying child custody.  Moreover, Father's brief contends: "If this Court reverses the custody modification, the support order must also be vacated and remanded for recalculation consistent with the custody arrangement and the statutory guidelines in KRS[1] 403.212."

Further facts will be provided as needed in our analysis.

---

[1] Kentucky Revised Statutes.

## ANALYSIS

### Standard of Review

Generally, we review questions of law, including statutory interpretation *de novo*, meaning without deference. *Seeger v. Lanham*, 542 S.W.3d 286, 290 (Ky. 2018). However, we review the circuit court's findings of fact for clear error, meaning we will not set aside factual findings which are supported by substantial evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003).

We review the circuit court's decision to modify custody for abuse of discretion. *Coffman v. Rankin*, 260 S.W.3d 767, 770 (Ky. 2008).

### CUSTODY MODIFICATION AND RELATED TIMESHARING ISSUES

Father contends the circuit court failed to make sufficiently specific findings to explain how it resolved material conflicts in the evidence. He asserts the court did not enter credibility findings. Father also argues the court failed to "acknowledge or account for unrebutted, favorable testimony" from witnesses including Kent Board, Dale Simpson, and Sheila Brown. (Father describes Kent Board as a close family friend, Dale Simpson as essentially his stepparent, and Sheila Brown as his mother).

Despite Father's assertion that testimony from his witnesses was not acknowledged, Mother points out that the DRC's recommended findings noted Father's presentation of testimony from a close friend, his mother's boyfriend, and

his mother who all said they regularly spend time with the children while Father exercises his parenting time. She also contends that factual findings and conclusions of law regarding custody modification were based on the evidence which the factfinder considered to be credible and relevant.

In response, Father more specifically asserts in his reply brief that the testimony of Kent Board, Dale Simpson, and Sheila Brown described his parenting, his bond with the children, and the children's "positive adjustment in his care." He again contends the court omitted findings about these witnesses' testimony.

We note the circuit court adopted the DRC's recommended findings, which identified these witnesses by their relationships with Father though not by name. And, further, summarized the basic nature of their testimony as describing spending time with Father and the children while Father exercised his parenting time.

We agree with Mother that the record reflects consideration of Father's witnesses' testimony by the DRC and the circuit court. Moreover, we are not aware of any authority requiring a court to discuss the testimony of every witness in detail or to expressly state whether it deemed each witness's testimony to be credible. Most importantly, the factual findings recommended by the DRC and adopted by the circuit court were supported by substantial evidence and not

clearly erroneous. And despite the lack of express statements about the perceived credibility of these witnesses, the adopted findings implicitly reflect the factfinder's determinations about the weight and credibility of the evidence.

In sum, we discern no reversible error in the lack of detailed description of these witnesses' testimony in the DRC's recommended findings and in the circuit court's order adopting the DRC's recommendations.

Next, we address Father's argument that the court rewarded Mother's contemptuous behavior by modifying custody for Mother to have sole custody of the children. The circuit court had previously found Mother to be in contempt for not properly facilitating Father's phone calls with the children and for signing the children up for activities during Father's scheduled phone time. It also found Mother in contempt for signing the children up for an online schooling program without consulting Father.

Mother suggests the circuit court order adopting the DRC's recommendations reflects an awareness of the prior contempt findings, as the court discussed how the children's activities put her at risk of being held in contempt. Mother also disputes Father's assertion that prior contempt findings against her indicate she cannot properly be awarded sole custody.

Father argues: "Courts must not reward a parent's violations of custody orders—particularly where they interfere with joint custody rights."

-6-

Appellant red brief, page 9 (citing *Gullion v. Gullion*, 163 S.W.3d 888, 893 (Ky. 2005)). Mother points out that the main point of contention in *Gullion* was whether one is required to file two affidavits along with a CR[2] 59.05 motion to alter, amend, or vacate a child custody decision. *See Gullion*, 163 S.W.3d at 889-90.

In *Gullion*, our Supreme Court did discuss indications that a parent had violated a court order by failing to return the child to the other parent after a scheduled visit, along with noting evidence that the parent violated the order due to concerns about the child's safety in the other parent's home. *Id*. at 890. Our Supreme Court also noted the trial court's finding that: "the father has difficulty in allowing contact between the mother and the child and difficulty in communicating with the mother regarding the child." *Id*. at 893. But our Supreme Court's opinion in *Gullion* contains no discussion of any contempt finding or the effect it should have on a decision to modify custody.

Furthermore, we are unaware of any authority which requires that any parent previously found to be in contempt of a custody or timesharing order is therefore forever ineligible from being awarded sole custody. We also note the circuit court adopted the DRC's recommendations, which included an acknowledgement that Mother had been held in contempt of court on two prior

---

[2] Kentucky Rules of Civil Procedure.

occasions. The adopted findings also included a statement that both parties had not always fully adhered to court orders, expressly noting that Father failed to use the court-ordered parenting application, although Mother had not filed a motion for contempt on this issue.

Furthermore, the circuit court's order adopting the DRC's recommendations expresses sound reasoning in explaining why vesting sole custody (especially decision-making authority) in Mother was in the children's best interests despite Mother's prior history of being found in contempt.

We find no abuse of discretion in the court's concluding that Mother's having sole custody (especially in terms of decision-making authority) was in the children's best interests despite Mother's prior history of being found in contempt based on the record before us. The record reflects that both parties had sought contempt findings against one another and that the parties had been to court several times in the three-year period between their divorce and the court's decision to modify custody. Most importantly, ample evidence showed the parties were simply unable to agree on many key parenting decisions, especially concerning the children's medical care and education.

Next, we address Father's assertions that the court failed to make statutorily required findings for modifying custody. Based on the parties' appellate briefs, neither party disputes that KRS 403.340 applies to the modification of

custody here (going from the parties' having joint custody to Mother's having sole custody).[3] But Father contends that the circuit court failed to make the findings required by KRS 403.340 and by KRS 403.270(2).

KRS 403.340 (Modification of custody decree) states in pertinent part:

(1) As used in this section, "custody" means sole or joint custody, whether ordered by a court or agreed to by the parties.

(2) No motion to modify a custody decree shall be made earlier than two (2) years after its date, unless the court permits it to be made on the basis of affidavits that there is reason to believe that:

(a) The child's present environment may endanger seriously his physical, mental, moral, or emotional health; or

(b) The custodian appointed under the prior decree has placed the child with a de facto custodian.

---

[3] Based on our review of the record, Father had previously argued to the circuit court that KRS 403.320(3) rather than KRS 403.340 established the standard for modification here. KRS 403.320(3) states: "The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child; but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral, or emotional health."

Our Supreme Court has held that modification of timesharing is governed by KRS 403.320(3) and that: "under KRS 403.320(3), a court can modify timesharing if it is in the best interests of the child, but it can only order a 'less than reasonable' timesharing arrangement if the child's health is seriously endangered." *Layman v. Bohanon*, 599 S.W.3d 423, 429 (Ky. 2020).

Despite Father's having argued to the circuit court that KRS 403.320(3) applied, Father's appellate briefs focus on arguing that the circuit court failed to make the findings required by KRS 403.340 and KRS 403.270(2). Father had also argued to the circuit court in his exceptions to the DRC's recommendations that required KRS 403.340 and KRS 403.270(2) findings had not been made.

(3) If a court of this state has jurisdiction pursuant to the Uniform Child Custody Jurisdiction Act, the court shall not modify a prior custody decree unless after hearing it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of entry of the prior decree, that a change has occurred in the circumstances of the child or his custodian, and that the modification is necessary to serve the best interests of the child.  When determining if a change has occurred and whether a modification of custody is in the best interests of the child, the court shall consider the following:

(a) Whether the custodian agrees to the modification;

(b) Whether the child has been integrated into the family of the petitioner with consent of the custodian;

(c) The factors set forth in KRS 403.270(2) to determine the best interests of the child;

(d) Whether the child's present environment endangers seriously his physical, mental, moral, or emotional health;

(e) Whether the harm likely to be caused by a change of environment is outweighed by its advantages to him[.]

. . .

(4) In determining whether a child's present environment may endanger seriously his physical, mental, moral, or emotional health, the court shall consider all relevant factors, including, but not limited to:

(a) The interaction and interrelationship of the child with his parent or parents, his de facto custodian, his siblings, and any other person who may significantly affect the child's best interests;

(b) The mental and physical health of all individuals involved;

(c) Repeated or substantial failure, without good cause as specified in KRS 403.240, of either parent to observe visitation, child support, or other provisions of the decree which affect the child, except that modification of custody orders shall not be made solely on the basis of failure to comply with visitation or child support provisions, or on the basis of which parent is more likely to allow visitation or pay child support;

. . .

(5) Subject to KRS 403.315, if the court orders a modification of a child custody decree, there shall be a presumption, rebuttable by a preponderance of evidence, that it is in the best interest of the child for the parents to have joint custody and share equally in parenting time. If a deviation from equal parenting time is warranted, the court shall construct a parenting time schedule which maximizes the time each parent or de facto custodian has with the child and is consistent with ensuring the child's welfare.

KRS 403.270(2)[4] provides in pertinent part that in determining a

child's best interests:

The court shall consider all relevant factors including:

(a) The wishes of the child's parent or parents, and any de facto custodian, as to his or her custody;

(b) The wishes of the child as to his or her custodian, with due consideration given to the influence a parent

_____

[4] Like KRS 403.340, KRS 403.270(2) also contains some provisions not relevant here regarding domestic violence and *de facto* custodians. *See generally* KRS 403.270(2)(g)-(j).

-11-

or de facto custodian may have over the child's wishes;

(c) The interaction and interrelationship of the child with his or her parent or parents, his or her siblings, and any other person who may significantly affect the child's best interests;

(d) The motivation of the adults participating in the custody proceeding;

(e) The child's adjustment and continuing proximity to his or her home, school, and community;

(f) The mental and physical health of all individuals involved; [and]

. . .

(k) The likelihood a party will allow the child frequent, meaningful, and continuing contact with the other parent or de facto custodian[.]

Father contends that, pursuant to KRS 403.340(3), a court must first find "a substantial and continuing change in circumstances" by clear and convincing evidence. We note KRS 403.340(3) does not expressly require a substantial and continuing change in circumstances nor a finding by clear and convincing evidence. However, before modifying custody, KRS 403.340(3) does require a finding that:

upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of entry of the prior decree, that a change has occurred in the circumstances of the child or his custodian, and that

the modification is necessary to serve the best interests of the child.

Father's brief asserts that the only change in circumstances found by the circuit court was that Mother "no longer agreed with the custody terms the parties had previously negotiated." Father also asserts Mother sought sole custody to avoid having to frequently go to court to resolve conflicts about decision-making. He contends the circuit court's findings about the impracticality of the parties' being unable to agree on decisions is insufficient to show a change of circumstances as defined by KRS 403.340(3).

In response, Mother contends that the circuit court made a proper finding of a change in circumstances, noting the adopted finding that Mother had changed her opinions on vaccinating the children based on her nursing career. She also emphasizes the court found a decline in the co-parenting relationship resulting in the parties' being unable to make decisions together for the children's benefit and points to the adopted finding that Father would not even use the court-ordered parenting application. Mother also alludes to the DRC's recommended finding (adopted by the circuit court) that the children's educational and health needs were not being met due to their parents' inability to agree on matters such as vaccination and enrollment in structured school programs. We also note the DRC's recommended and adopted finding about the children's reaching school age

-13-

necessitating certain decisions which Mother's being awarded sole custody would allow her to make so the children would not have to miss out on school.

While perhaps it would have been preferable to use more of the specific language set forth in KRS 403.340(3) in making its findings, we agree with Mother that the court essentially found a change in the circumstances of both children and their parents since the custody decree.

We now address Father's contention that the court failed to make statutorily required findings about the children's best interests. Having determined that a change in circumstances had occurred, the circuit court was then faced with determining whether a change in custody was in the children's best interests considering the factors listed in KRS 403.340(3) and KRS 403.270(2). The KRS 403.340(3) best interest factors include whether the custodian agrees to modification, whether the child has been integrated into the family of the party seeking modification, and whether the advantages of modification outweigh the potential harm of modification.

Father points out he did not agree to Mother receiving sole custody and had filed a motion to increase his parenting time. Father also asserts both parties agreed the children would be integrated into their respective households and he notes the testimony of others that the children were comfortable in his home.

He contends the court failed to make any findings about KRS 403.340(3) factors, including weighing the advantages and disadvantages of modifying custody.

Mother points out, however, that the DRC's recommendations (adopted by the circuit court) expressly stated that custody was not to be modified lightly and that the advantages and disadvantages of modification must be carefully weighed. She also notes the adopted DRC finding to the effect that if custody were not modified, decisions about the children's education and medical care would not be made resulting in harm to the children. She also emphasizes the finding that the children should be attending kindergarten and second grade but that neither child was currently enrolled in an educational program.

We conclude the court properly considered whether the parties agreed to modification, evidence of the children's integration into both parents' households, and the advantages and disadvantages of modification. *See* KRS 403.340(3)(a); KRS 403.340(3)(b); KRS 403.340(3)(e).

Next, we address the parties' arguments about the application of KRS 403.340(3)(d). Father argues that KRS 403.340(3)(d) requires that before altering a custody decree in place less than two years, a court must make a finding by clear and convincing evidence that the children's present environment seriously endangers the children's physical, mental, moral, or emotional health. We

disagree. KRS 403.340(2), not KRS 403.340(3)(d), pertains to motions to modify custody within two years.

Moreover, KRS 403.340(3)(d) does not expressly require a finding by clear and convincing evidence that the children's health is seriously endangered to modify custody. Instead, KRS 403.340(3)(d) simply states that in determining the children's best interests, a court shall consider: "Whether the child's present environment endangers seriously his physical, mental, moral, or emotional health[.]" In other words, the court must consider *if* there is serious endangerment as part of its best interest analysis, but it is not required to find serious endangerment to modify custody decrees which have been in place for more than two years.

Indeed, construing KRS 403.340 as amended in 2001, our Supreme Court held that for custody decrees in place for more than two years, a finding of serious endangerment is not required for modification, and a court may modify custody if in the children's best interests considering KRS 403.270(2) factors. *Coffman*, 260 S.W.3d at 769. Although KRS 403.340 has been amended again following the rendition of *Coffman* in 2008, the current version of the statute similarly does not require a finding of serious endangerment for custody orders in place more than two years. *See* KRS 403.340(3)(d). *Compare* KRS 403.340(2).

Mother asserts in the appellee brief that the custody provisions of the late 2021 divorce decree remained in place for over two years before she filed her motion for modification in early 2024.  She also states no other motions to modify custody had been previously filed.  Father does not dispute these assertions about the prior custody decree remaining in place over two years and the lack of other motions to modify custody in his reply brief.

In any event, regardless of whether a finding of serious endangerment was required, such a finding was made.  The circuit court adopted the DRC's recommended finding of serious endangerment which stated: "The minor children's present environment seriously endangers their physical, mental, moral and emotional health because there are basic needs that are not being met due to decisions not being reached."  (R, p. 431).  The court further adopted the DRC's finding that: "The minor children do not have a primary care doctor, do not have health insurance and are not vaccinated."  (R, p. 431).

Nonetheless, Father contends in his reply brief that the serious endangerment findings made here "lacked any factual basis and relied on vague references to 'limbo' and 'conflict,' despite uncontroverted testimony that both children are healthy, thriving, and well-adjusted."

We disagree with Father's characterization of the serious endangerment findings made here.  Certainly, no one disputed that the children

-17-

were generally healthy and well-adjusted at the time of the modification proceedings. Nonetheless, the court adopted the DRC's recommended finding that the children's physical and mental health was seriously endangered[5] while the parents had joint decision-making power because the parents could not agree on key decisions resulting in the children's lacking a primary care doctor, health insurance, vaccinations, and access to structured education. And this finding is supported by substantial evidence.

Moreover, we reject Father's arguments that the circuit court violated his constitutional rights in its resolution of issues about serious endangerment. Father's brief argues: "As the U.S. Supreme Court recognized in *Troxel v. Granville*, 530 U.S. 57 (2000), a parent's right to direct their child's upbringing is a fundamental liberty interest, and judicial second-guessing of those decisions is improper absent demonstrable harm." He further asserts: "By replacing the statutory requirement of . . . *serious endangerment* with its own unevidenced misgivings, the trial court exceeded its authority and violated the constitutional principles articulated in *Troxel.*"

---

[5] As our Supreme Court recognized in *Pennington*, the term *serious endangerment* "is not defined"—*see Pennington v. Marcum*, 266 S.W.3d 759, 769 (Ky. 2008)—at least not in any relevant Kentucky statute. Nonetheless, one can be endangered—placed at risk of harm—without presently being sick or injured. *See, e.g.*, *Endangerment*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining *endangerment* as "The act or an instance of putting someone or something in danger; exposure to peril or harm[.]").

*Troxel* is distinguishable, however, because it addressed a dispute between a parent and non-parents (grandparents) over visitation. *See Troxel v. Granville*, 530 U.S. 57, 61, 120 S. Ct. 2054, 2057, 147 L. Ed. 2d 49 (2000). Unlike the present case, *Troxel* did not address a dispute between parents over custody, timesharing, or visitation. Thus, *Troxel* does not apply here. And again, the circuit court made a finding that the parties' having joint custody was seriously endangering the children which was supported by substantial evidence despite such a finding not being strictly required as we discussed previously.

In sum, the court's factual findings related to KRS 403.340(3) best interest factors are supported by substantial evidence and we discern no abuse of discretion in its KRS 403.340 findings regarding best interests. Next, we address Father's assertion that the court also failed to make required KRS 403.270(2) findings about best interests.

KRS 403.340(3)(c) states that, in ruling on requests to modify custody, a court must also consider the best interests factors set forth in KRS 403.270(2). These factors include: the wishes of the parents and the children and the influence a parent may have on the children's wishes; the interactions and interrelationships between the children, their parents, and other people who significantly affect the children's best interests; the motivation of adults involved in the custody proceeding; the children's adjustment and proximity to their home,

school, and community; the physical and mental health of the parents and children; and the likelihood that each parent will afford the other a meaningful opportunity to remain involved in their children's lives.

Father contends the circuit court failed to properly consider the older child's stated wish to spend more time with him, Mother's testimony suggesting that her opinion mattered more than his, testimony from various witnesses about the children's close and loving relationship with Father and his extended family, and evidence that Mother's current husband used corporal punishment on the children without consulting Father.

Father also points out that he testified to living in the same house he shared with Mother during their marriage and to evidence the children are well-adjusted to his home and could be involved in similar extracurricular activities in his community to those available in Mother's community. He also points to evidence of Mother becoming frustrated or overwhelmed by interacting with him and asserts Mother has repeatedly impeded his parenting rights, pointing to the court's contempt findings. Father insists that the record favors him on key KRS 403.270(2) factors and that Mother failed to rebut evidence favorable to him.

Mother points out, however, that the adopted DRC recommendations included a finding that the older child wished to spend more time with Father. She also notes the finding that the older child talked to both parents about wanting

-20-

more time with Father, and that the older child said Father told her Mother lies. She also points out the court's order specifically notes Father has a bond with the children and is a caring parent. Mother also emphasizes findings that the children had adjusted to moving to Georgia, where Mother lives.

In response to Father's assertion that the court failed to make the necessary or statutorily required findings for modifying custody, Mother points out that the court made written findings of fact—unlike the trial court in *Anderson v. Johnson*, 350 S.W.3d 453 (Ky. 2011), which Father cited to argue for reversal based on lack of sufficient findings. Mother's brief also asserts the circuit court "specifically stated the applicable statutes, made specific findings of facts from the testimony and evidence" and "used those facts to apply to the factors the court found relevant, all of which was reduced to writing." Mother also points out KRS 403.270(2) directs courts to "consider all relevant factors"—but does not expressly require that courts consider all listed factors.

We agree with Mother. The court made sufficient findings of relevant KRS 403.270(2) factors.

Lastly, we leniently address a custody-related argument made solely in Father's reply brief—namely, his contention that the circuit court ignored the statutory presumption favoring joint custody and equal parenting time set forth in

KRS 403.340(5).[6] Father contends that the court failed to cite or apply KRS 403.340(5)[7] and failed to maximize the children's time with him since it granted him "only a modest summer increase" in parenting time and otherwise left "the regular [timesharing] schedule unchanged[.]"

Father points out that Mother's appellee brief cites KRS 403.270 in referring to the acknowledgment that the court must construct a parenting time schedule maximizing his parenting time in the DRC's recommendations,[8] which were adopted by the circuit court. But Father contends this reference does not satisfy "the separate requirement to address the presumption in KRS 403.340(5)"—which he argues compounded its errors in failing, in his view, to make findings required by KRS 403.340(3)(d)-(e).

---

[6] "The reply brief is not a device for raising new issues which are essential to the success of the appeal." *Milby v. Mears*, 580 S.W.2d 724, 728 (Ky. App. 1979). However, we leniently consider this custodial/timesharing argument raised in Father's reply brief since it appears to generally respond to Mother's brief's noting the DRC's discussion of the statutory presumption in KRS 403.270 and the fact that the court ultimately awarded Father four weeks' uninterrupted parenting time in the summer, which he had previously not received. *See Milby*, 580 S.W.2d at 728 (noting appellee suffered no prejudice from appellant discussing an issue in a reply brief which was not raised in the initial appellant brief since appellee brief also discussed same issue).

[7] However, the DRC's report (which was adopted by the circuit court) quoted KRS 403.340 in its entirety—including KRS 403.340(5).

[8] As Father's brief points out, Mother cites KRS 403.270 in discussing the DRC's acknowledgement that the court must maximize each parent's time with the children when equal timesharing is not possible. But after quoting both KRS 403.270 and KRS 403.340 at the beginning of her recommended conclusions of law, the DRC did not specifically cite to either statute when she later stated the court must maximize Father's time with the children due to the change in custody, although equal timesharing was not in the children's best interest.

-22-

Unfortunately for Father, we have already rejected his assertions that the circuit court erred in failing to make KRS 403.340(3)(d)-(e) findings. Moreover, any error in failing to specifically cite KRS 403.340(5) is harmless pursuant to CR 61.02. Regardless of whether the court specifically cited this statutory subsection, it adopted the DRC's recommended findings and conclusions, including the DRC's quotation of KRS 403.340(5)'s presumption and the DRC's recognition that Father's parenting time must be maximized to the extent consistent with the children's welfare.

The court also adopted the DRC's recommended findings that equal timesharing was not in the children's best interests; It would interfere with the children's activities and that Father's time with the children should be modified not to interfere with any school in which the children enrolled. Yet the court also adopted the recommendation for Father to be granted four weeks' uninterrupted parenting time in the summer, which was an increase in his summer parenting time. We also note the DRC recommended, and the court adopted, requirements for Mother to inform Father of medical and educational decisions and for the parties to coordinate his summer parenting time several weeks in advance. We discern no reversible error in the court's adoption of the DRC's recommendations on timesharing.

## CHILD SUPPORT

Father's appellant brief notes that the circuit court awarded Mother child support based on the assumption Mother would have sole custody and argues: "That flawed premise led the court to impute income to [Father] beyond what the record supports, to accept unverified child care expenses and to disregard direct payments and in-kind support he had already provided." Father does not support any arguments about imputed income, unverified childcare expenses, or his allegedly being entitled to credits for direct payments or in-kind support with citations to supporting legal authority, however. So, we need not reach such specific arguments. *See Hadley v. Citizen Deposit Bank*, 186 S.W.3d 754, 759 (Ky. App. 2005) (citations omitted) ("[A]n alleged error may be deemed waived where an appellant fails to cite any authority in support of the issues and arguments advanced on appeal. . . . It is not our function as an appellate court to research and construct a party's legal arguments[.]").

We note Father's sole request for relief regarding child support is that if the child custody modification is disturbed on appeal, the child support order must also be vacated and child support recalculated on remand based on the new custody arrangement and KRS 403.212 requirements.[9] Since we affirm the

---

[9] Father's reply brief raises an issue about child support which was not raised in his initial appellant brief. The reply brief asserts that the child support amount awarded was "calculated without the shared-parenting credit provided by KRS 403.2122[.]" (Reply brief, page 4). The

custody modification decision, we also affirm the child support provisions in the judgment—especially since Father has not requested any specific relief regarding child support in the event the custody modification is affirmed.

Further arguments made by the parties which are not discussed herein have been determined to lack merit or relevancy to our resolution of this appeal.

## CONCLUSION

For the foregoing reasons, we **AFFIRM**.

ALL CONCUR.

---

initial appellant brief did not cite KRS 403.2122 nor make any arguments about the shared-parenting credit. Again, it is improper to raise issues for the first time in a reply brief which could have been raised in the appellant brief. *Milby*, 580 S.W.2d at 728. Moreover, Father's new reply brief argument about child support does not appear to be in response to any appellee brief argument and Mother lacks an opportunity to respond to the reply brief. *See id*. *See also* Kentucky Rules of Appellate Procedure ("RAP") 32(C)(2).

Also, Father does not provide specific citations to the record regarding this issue first raised in his reply brief. He further does not state if or how he raised the KRS 403.2122 shared-parenting credit issue to the circuit court to preserve this issue for our review. *See* RAP 32(A)(4); RAP 32(C)(1). Nor does Father request palpable error review. Thus, we decline to reach this issue. *See generally Gasaway v. Commonwealth*, 671 S.W.3d 298, 314 (Ky. 2023); *Oakley v. Oakley*, 391 S.W.3d 377, 380 (Ky. App. 2012). Although *Oakley* was decided prior to the adoption of the Rules of Appellate Procedure, its reasoning remains sound.

BRIEFS FOR APPELLANT:

Haley S. Cooper
Matthew E. Durham
Elizabethtown, Kentucky

BRIEF FOR APPELLEE:

Earlene Whitaker Wilson
Leitchfield, Kentucky